**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

|  |  |  |
|---|---|---|
| **Coalition for Open Democracy,** | ) ) ) ) | |
| Plaintiff, | ) ) | **Case No. 1:26-cv-647** |
| vs. | ) ) | |
| **David M. Scanlan, in his official capacity as New Hampshire Secretary of State and John Formella, in his official capacity as New Hampshire Attorney General,** | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

**NATURE OF THE CASE**

1. On June 2, 2026, New Hampshire House Bill 323 ("HB 323") went into effect. This statute eliminated student identification cards as a valid form of identification when obtaining a ballot. On April 23, 2026, Secretary of State David M. Scanlan issued a directive to towns and clerks, announcing that student identification cards would no longer be accepted during the registration process. HB 323 and Secretary Scanlan's April 23 directive place a material burden on the right to vote by eliminating a secure method of proving identity that has been used without issue since the passage of New Hampshire's voter ID law. That method—a student identification card—is overwhelmingly used by young voters, who have

1

been consistently targeted by New Hampshire politicians. Receiving ample evidence of the burdens HB 323 creates, the New Hampshire legislature sought to justify the bill by referencing a non-existent problem: non-resident voter fraud, for which no evidence has or can be cited and in any event is a matter HB 323 does nothing to address, as student identification cards are used to prove identity, not domicile. Nevertheless, the New Hampshire legislature passed HB 323 and Governor Ayotte signed it into law on April 3, 2026. The burdens HB 323 creates—which are addressed at length below—were magnified by Secretary Scanlan on April 23, 2026, when he unlawfully extended the ban in HB 323 to the voting registration process, in excess of any power he possesses. As a result, young voters in New Hampshire must now navigate a burdensome bureaucracy to exercise their fundamental right to vote. This scheme unconstitutionally burdens the right to vote, discriminates against young voters on account of their age, and unlawfully rewrites New Hampshire's election statutes.

2.     Plaintiff Coalition for Open Democracy ("Open Democracy") seeks:

a)     a declaratory judgment that HB 323 and Secretary Scanlan's unlawful April 23, 2026 directive extending HB 323's ban on student identification cards to the registration process unconstitutionally burden the fundamental right to vote under the First and Fourteenth Amendments to the United States Constitution;

2

b)    a declaratory judgment that HB 323 and the April 23 directive constitute illegal age discrimination violating the Twenty-Sixth Amendment to the United States Constitution;

c)    a declaratory judgment that HB 323 and the April 23 directive constitute illegal age discrimination violating the Fourteenth Amendment's Equal Protection Clause;

d)    a declaratory judgment that Secretary Scanlan's April 23 directive that student identification cards also would no longer be accepted as proof of identification when registering to vote contradicts RSA654:12, which was not amended by HB 323, exceeds his statutory authority, and violates the New Hampshire Constitution's separation of powers provision; and

e)    injunctive relief barring state officials from enforcing or giving effect to HB 323 and the April 23, 2026 directive, barring Secretary Scanlan from continuing to issue incorrect and illegal guidance and ordering Secretary Scanlan to issue guidance in line with the ruling.

**JURISDICTION AND VENUE**

3.    Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under the color of state law of their rights under the First, Fourteenth and Twenty-Sixth Amendments to the United States Constitution, and pursuant to this Court's inherent equitable power to enjoin unlawful actions to redress Secretary Scanlan's violation of New Hampshire's Separation of Powers

doctrine. *Rau v. New Hampshire Div. of Welfare*, 115 N.H. 156, 158, 335 A.2d 657, 658 (1975).

4.      This Court has subject matter jurisdiction over the federal claims under 28 U.S.C. § 1331.

5.      This Court has subject matter jurisdiction over the state claim under 28 U.S.C. § 1367.

6.      This Court has personal jurisdiction over Secretary Scanlan, because he is sued in his official capacity as a public official in New Hampshire and because he works and resides in New Hampshire.

7.      This Court has personal jurisdiction over Attorney General Formella, because he is sued in his official capacity as a public official in New Hampshire and because he works and resides in New Hampshire.

8.      Declaratory relief is authorized by 28 U.S.C. §§ 2201–2202.

## **PARTIES**

9.      Plaintiff Coalition for Open Democracy ("Open Democracy") is a non-profit, non-partisan organization formed under section 501(c)(3) of the Internal Revenue Code and headquartered at 4 Park Street, Suite 301, Concord, New Hampshire 03301. Zink Aff. at 2.

10.     Defendant David M. Scanlan is the New Hampshire Secretary of State, with an office located at 25 Capital Street, Concord, New Hampshire 03301. The Secretary of State is a constitutional officer and the chief elections officer for New

Hampshire and is in charge of administering New Hampshire's election laws. RSA 652:23. Secretary Scanlan is named as a Defendant in his official capacity.

11.     Defendant John Formella is the New Hampshire Attorney General, with an office located at 1 Granite Place, Concord, New Hampshire 03301. The Attorney General is the chief legal officer and enforcement officer in the State of New Hampshire. RSA 7:6, 7:11. The Attorney General is required to provide advice and approval to the Secretary of State's biennial manual of election laws and procedures, which will be issued before the 2026 general election. RSA 652:22. Attorney General Formella is named as a Defendant in his official capacity.

### FACTS

### Voting in New Hampshire Before HB 323

12.     Since the introduction of New Hampshire's voter ID law in 2012, up until the passage of HB 323 and the April 23 directive, voters have been able to register to vote and obtain a ballot using student identification cards to establish identity.

13.     In New Hampshire, voting registration is run locally by cities and towns. RSA 654:8.

14.     To register to vote, a prospective voter must go to their local city or town clerk and present proof of identity, age, domicile, and citizenship. RSA 654:12.

15.     Each voter qualification—identity, age, domicile and citizenship—has different, though sometimes overlapping, documentation requirements.

16.     Prospective voters in New Hampshire can establish their identity under New Hampshire law with a driver's license from any state or the federal

5

government, a passport, any photo identification issued by federal, state, or local government, or "[a]ny evidence that reasonably establishes that it is more likely than not that the person is who they claim to be." RSA 654:12(d)(4).

17.     Prior to HB 323, student identification cards were acceptable forms of identification to obtain a ballot. Prior to Secretary Scanlan's April 23 directive, student identification cards were also acceptable forms of identification during the voter registration process under RSA 654:12(d)(4).

18.     Prospective voters in New Hampshire can establish citizenship with a birth certificate, passport, naturalization papers, current registration, "any other reasonable documentation which indicates the applicant is a United States Citizen," RSA 654:12, or a qualified voter affidavit, *New Hampshire Youth Movement v. Scanlan*, __ F.Supp.3d. __, No. 24-CV-291-SE, 2026 WL 1500857, at *39 (D.N.H. May 28, 2026) (*NHYM*).

19.     Student identification cards have never been a valid form of establishing citizenship.

20.     Prospective voters in New Hampshire can establish domicile with a driver's license, state-issued identification card, vehicle registration, a federally-issued identification card with an address, or a government-issued check, benefit statement, or tax document. RSA 654:12(c)(1). A prospective voter who lacks those forms of proof may present "reasonable documentation of having established a physical presence at the place claimed as domicile, having an intent to make that place their domicile, and having taken a verifiable act to carry out that intent." RSA

654:12(c)(2). Reasonable documentation includes lease or rental agreements, tax bills, *id.*, and, in the case of young voters, notarized statements by parents and guardians, RSA 654:12(c)(2)(I).

21.     Except in rare cases where student-identification cards from public high schools list the address of a student, they have never been a valid form of establishing domicile. RSA 654:12(c)(2)(E).

22.     On election day, a registered voter must present proof of identity to obtain a ballot. RSA 659:13.

23.     Before HB 323, New Hampshire voters could establish their identity under New Hampshire law with a driver's license from any state, a passport, or any photo identification issued by federal, state, or local governments. RSA 659:13(II)(a). Additionally, prospective voters could establish their identity with student identification cards if they were issued by "(i) A college, university, or career school in New Hampshire and approved to operate or licensed to operate in New Hampshire. (ii) A public high school in New Hampshire. (iii) A nonpublic high school in New Hampshire accredited by a private school accrediting agency that is recognized by the department of education. (iv) Dartmouth College. (v) A college or university operated by the university system of New Hampshire or the community college system of New Hampshire." 2026 New Hampshire Laws Ch. 20 (H.B. 323) (quoted text stricken by H.B. 323).

24.     All forms of identification, including student-identification cards prior to HB 323, must "show the name of the individual to whom the identification was

7

issued, and the name shall substantially conform to the name in the individual's voter registration record; it also shall show a photograph of the individual to whom the identification was issued," must have an expiration or issue date, and be presented within five years of either date. RSA 659:13(II)(a).

25. New Hampshire permits election day registration. RSA 654:7-a; RSA 654:7-B.

26. Because New Hampshire offers election day registration, it is exempt from certain requirements of the National Voter Registration Act; without it, New Hampshire would have to offer voter registration at the DMV or at any public office that provide public assistance or services to people with disabilities, and it would have to allow voter registration by mail. New Hampshire does not offer registration via any of these means, except mail-in registration for voters with a bona fide excuse, such as disability.

27. As a result, New Hampshire's election system is "designed to rely intensely on election day registration." *NHYM*, 2026 WL 1500857, at *31.

### **HB 323 Requires Young Voters Without Driver's Licenses to Obtain State-Issued Identification Cards**

28. HB 323 amends RSA 659:13 by eliminating student identification cards as a valid form of proving identity to obtain a ballot.

29. On April 3, 2026, Governor Kelly Ayotte signed HB 323 into law. The law went into effect on June 2, 2026.

30.     On April 23, 2026, Secretary Scanlan announced that "[e]ffective June 2, 2026, student IDs cannot be used as proof of ID when registering to vote, requesting an absentee ballot, or checking in to vote in an election."[1]

31.     RSA 654:12(d), which describes the acceptable forms of identification when registered to vote, was not amended by HB 323.

32.     There is no legal basis for Secretary Scanlan's April 23 directive.

33.     In New Hampshire, voting registration is run locally by cities and towns. RSA 654:8.

34.      Young voters that attend Open Democracy's high-school voter registration drives can register at their high schools.

35.     Young voters at many colleges may register and vote on campus or near campus.[2]

36.     Before HB 323 and Secretary Scanlan's April 23 directive, a young voter in New Hampshire seeking to register to vote without a driver's license or passport could go to their town or city clerk, present proof of age, citizenship, and domicile, and present their student identification as proof of their identity. Similarly, on election day, a young voter without a driver's license or passport could obtain a ballot by presenting their student identification card.

---

[1] Press Release, Secretary of State of New Hampshire, Secretary of State Shares Election Resources for New Hampshire Students (April 23, 2026), https://mm.nh.gov/files/uploads/sos/docs/4-23-26-student-flyer-press-release.pdf.

9

37. After HB 323 and Secretary Scanlan's April 23 directive, most young voters without driver's licenses or passports will have to obtain state-issued identification cards to be able to register to vote and to obtain a ballot. RSA 659:13(a) as amended by HB 323 now lists as valid forms of identification for purposes of obtaining a ballot a "driver's license issued by any state or the federal government," a state-issued identification card (from any state), a "United States armed services identification card" and a "United States passport or passcard." For purposes of registering to vote, RSA 654:12(d) lists "[p]hoto identification issued by local or state government" as an acceptable way to prove identity.

38. Given the requirements of driving hours, passing a written exam, as well as the functional requirement of driver's education, which can cost up to $1,100,[3] as well as the expense of purchasing and owning a vehicle and the existence of school restrictions on use of an automobile, many young voters cannot afford and will not seek to obtain a driver's license as soon as they are legally allowed to drive.

39. The number of young people who do not get their driver's licenses is rising, and the average age at which people get their driver's license is trending upward.

---

[3] 1st Gear Driving, *Teen Drivers Ed Classes*, https://www.1stgeardriving.com/teen-drivers-ed-classes.phtml . New Hampshire Division of Motor Vehicles, *Driver Education*, https://www.dmv.nh.gov/drivers-licensenon-driver-ids/apply-your-first-drivers-licensenon-driver-id/driver-education#:~:text=Driver%20Education%20is%20helpful%20at,an%20approved%20driver%20education%20program.

40.     As to passports as a means of identification, given the significant fee and waiting period,[4] obtaining a passport is also not a viable option for many young voters.

41.     "[A]pproximately 38% of U.S.-born eligible New Hampshire voters do not possess a passport." *NHYM*, 2026 WL 1500857, at *6.

42.     Further, unlike student identification cards, students who do possess a passport do not commonly carry it and have it accessible. "[O]nly approximately 11% of eligible voters in New Hampshire who possess a passport . . . carry those documents with them regularly." *Id.*

43.     For the significant number of young voters without a driver's license or passport, in order to be able to register and to vote as a result of HB 323 they will now need to undertake the burdens of obtaining a state-issued identification card. RSA:260:21

44.     Cards issued under RSA 260:21 may be used to prove identity both when registering to vote, RSA 654:12(I)(d)(3), and obtaining a ballot, RSA 659:13(II)(a)(2).

45.     State-issued identification cards are issued by the New Hampshire Department of Motor Vehicles ("DMV"). RSA 260:21.

---

[4] United States Department of State, *Apply for Your Adult Passport*, https://travel.state.gov/content/travel/en/passports/need-passport/apply-in-person.html.

46.    Obtaining a state-issued identification card is unduly burdensome, fails to increase election security, and imposes an unconstitutional fee on first-time voters. Zink Aff. at 18.

47.    Under state and federal law and regulations, student identification cards remain a legitimate and reliable means by which a student can establish their identity and residence for many purposes. It is only in the context of voting that New Hampshire has barred their use. Thus, absent the new requirements of HB323, there is no reason for most students to spend the time and money needed to obtain a state-issued identification card; the only reason to do so is to enable them to vote under this new rule.

### HB 323 and the April 23 Directive Create a Severe Burden on the Right to Vote Without Increasing Election Security or Voter Confidence

48.    Further demonstrating the illogic and senselessness of HB 323, in fact young voters can still use student identification cards to obtain the other forms of identification that under HB 323 remain eligible for use as proof of identification to register to vote and obtain a ballot in New Hampshire. In short, the very student IDs that HB 323 makes no longer eligible to establish identity for purposes of voting are nevertheless used to establish identity to obtain the non-driver ID that must henceforth be used to demonstrate identity at the poll.

49.    Thus, to establish identity in order to obtain a passport, a young voter can submit their student identification card and their school yearbook.[5] That voter

---

[5] United States Department of State, *Photo ID Requirements*, https://travel.state.gov/content/travel/en/passports/how-apply/identification.html;

can then register to vote using their passport—which they obtained by showing their student ID—as their form of identification.

50.    Even more absurdly, a young voter can obtain their state-issued identification card which they then can use to vote under HB 323 by presenting the very same student identification card to prove their identity to obtain the non-driver ID.

51.    A young voter seeking to register to vote had been able, with a birth certificate, proof of domicile, and a student identification card, to register with their local town clerk before HB 323 was passed.

52.    After HB 323 and the April 23 directive, that young voter may no longer register to vote with those documents.

53.    However, a young voter can go to the DMV, present a birth certificate and student identification to prove identity, and present proof of residency—such as lease or rental agreements, tax bills, or notarized statements by parents and guardians[6]—and receive a state-issued identification card.

---

United States Department of State, *Apply for Your Adult Passport*, https://travel.state.gov/content/travel/en/passports/need-passport/apply-in-person.html.

[6] To the extent the proof of domicile requirements in the voter registration statute and proof of residency requirements in the DMV guidelines diverge, the DMV guidelines are *less* restrictive than the domicile requirements of RSA 654:12(c) that young students without driver's licenses had to comply with. New Hampshire Department of Motor Vehicles, *Identity and Residency Requirements*, https://www.dmv.nh.gov/sites/g/files/ehbemt416/files/inline-documents/dsmv634b.pdf.

54.     Thus, that young voter must bring those very same documents first to the DMV, receive a state-issued identification card, then present that card to the local town clerk to register to vote.

55.     Excluding the student identification cards from the list of acceptable forms of identification to register and to vote does not require any new or more stringent means of proving identification. They can still use their student identification cards as a basis upon which they are given their state-issued ID or their passport.

56.     Under New Hampshire law, the standards for issuing a state-issued identification card are identical to those for issuing a driver's license.[7]

57.     Thus, many voters who register to vote with driver's licenses obtained that identification by presenting the DMV with student identification cards.

58.     Thus, while doing nothing to increase election security, by excluding the student identification cards from the list of acceptable forms of identification to register and to vote, New Hampshire has created new and substantial hurdles for young voters.

---

[7] The statutes empowering the DMV to issue state-issued identification cards and driver's licenses afford the DMV leeway in determining acceptable documentation. RSA 260:21; RSA 263:5-d; RSA 263:5-e. The DMV has created a single checklist for both driver's licenses and state-issued identification cards. New Hampshire Department of Motor Vehicles, *Identity and Residency Requirements*, https://www.dmv.nh.gov/sites/g/files/ehbemt416/files/inline-documents/dsmv634b.pdf.

59.     HB 323 requires the many students who lack a driver's license or passport to go to multiple offices with the same documents—including their student identifications—to register to vote.

60.     For many young voters, obtaining a state-issued identification card is a significant burden.

61.     State-issued identification cards are only issued by the DMV. The DMV has fourteen locations throughout the entire state that issue identification cards, two of which (Coleridge and North Haverhill) have limited hours. All locations are only available by appointment. As of the filing of this complaint, branches with regular hours operate, depending on the branch, from 8:00 a.m. to 4:30 p.m. or 8:15 a.m. to 4:15 p.m., Monday to Friday, with the Raymond office offering extended hours on Tuesday and Thursday to 5:00 p.m. The other offices do not list their hours and do not have regular hours. No office is open on weekends.[8]

62.     Young voters who live on their own or attend college in New Hampshire can prove domicile with a lease, utility bill, mail bearing their name indicating a New Hampshire address, or, in the case of college students, documents that indicate they are currently enrolled in an institution of higher learning in New Hampshire. RSA 654:12(I)(c)(2).

63.     Many young voters who live with their guardians and do not attend college in New Hampshire will have to either bring their guardians with them to

---

[8] New Hampshire Division of Motor Vehicles, *Hours and Locations*, https://www.dmv.nh.gov/hours-and-locations.

the DMV or obtain a notarized statement from their parents to prove their residence in New Hampshire, given the requirements to prove residence.[9]

64.     This will particularly place a burden on voters with low-income working parents, parents who work hourly jobs, or parents who commute a long distance to their job sites, as these parents likely would not be able to get to a DMV appointment ahead of a voter registration drive.

65.     Further, the need to now go to a DMV to obtain a state-issued form of ID in order to be able to register and obtain a ballot will present a burden on all students. DMVs are not more easily accessible than local town or city clerk's offices. While each town and city has a clerk's office, New Hampshire has only fourteen DMV locations; they are not located in each town.

66.     New Hampshire lacks a robust public transportation system; many towns have no public transportation at all, making DMV locations inaccessible for many people.

67.     Young voters who do not have a driver's license and therefore either rely on public transport or transportation from friends and family will struggle to get to one of the relatively few DMV locations, as compared to the more local town or city clerk's offices.

68.     Some schools keep copies of birth certificates on file, which young voters can use during high school registration drives. A young voter that has lost or

---

[9] New Hampshire Division of Motor Vehicles, *Identity and Residency Requirements*, https://www.dmv.nh.gov/sites/g/files/ehbemt416/files/inline-documents/dsmv634b.pdf.

lacks access to their original birth certificate will have to obtain another original copy, then go to the DMV, and then return to the town clerk.

69. Young voters with disabilities preventing them from driving will be particularly impacted, as they both have no reason to obtain a driver's license and will typically face an even greater struggle to obtain transportation to the DMV for a state-issued identification card.

70. Further adding to the burden is the fact that high schools in New Hampshire typically end between 2:30 p.m. and 3:00 p.m. Young voters will have a limited window of opportunity to go to the DMV to obtain a state-issued identification card which will now be required to vote.

71. Several large high schools in New Hampshire have no DMV within a half-hour car drive and are over an hour public transit ride away. These schools include Plymouth Regional High School, Convale High School, Pinkerton High School, and Littleton High School.

72. Many colleges in New Hampshire restrict access to vehicles.

73. For example, Dartmouth does not allow freshmen or sophomores to have cars on campus.

74. Because many colleges restrict cars on campus, students both have no incentive to obtain costly driver's licenses and have only limited ability to access DMV locations in order to obtain a state-issued identification card.

75.    Further, college students typically have classes during the day. College students without driver's licenses will struggle to get to remote DMV locations in between classes.

76.    The closest DMV location to Dartmouth College is thirty miles from the campus, in Newport, New Hampshire. There is no consistent, reliable mode of public transport from Dartmouth College to Newport, New Hampshire.

77.    HB 323 also imposes additional burdens on those who wish to avoid paying a fee to vote.

78.    Student identification cards are typically issued free of charge.

79.    In contrast, state issued identification cards are subject to a $20 fee except for those over the age of sixty-five who turn in their driver's license to the DMV. RSA 260:21(V)(a).

80.    As of the filing of this complaint, SB 660, which amends the voucher process, has been passed but is not operative until August 18, 2026. Prior to SB 660, only registered voters could use the voucher program, making it useless to many young voters that rely on student identification cards to register as many of them are first-time voters.

81.    Even after SB 660 takes effect, students needing to obtain a voucher that would also exempt them from this fee must first go to their town or city clerk's office, present proof of domicile, and swear that they lack other forms of identification. The would-be student voter must then present the voucher at the

DMV when applying for a state-issued identification card to waive the fee. RSA 260:21(V)(b); SB 660. That voter must then return to the clerk to register to vote.

82.    The voucher system is rarely used, and some clerks are unaware it exists and have turned away young voters requesting vouchers.

83.    The voucher system is unnecessarily burdensome for the voters who qualify for it, requiring voters to make three trips to two different offices to exercise their right to vote without paying a fee. Thus, in order to be able to cast a vote, a student must either go through these burdens of obtaining a voucher or submit, in essence, to what amounts to a poll tax.

84.    College students who leave their out-of-state driver's licenses or passports at home will not qualify for the voucher system, but will still require a state-issued identification card, forcing them to pay a fee to vote.

85.    Given the close margins in many elections in New Hampshire, the collective burdens of HB 323 and Secretary Scanlan's April 23 directive could well tip the balance of future elections.[10]

86.    These burdens are not limited just to the particular election in which young voters attempt to vote. Because voting is habit-forming, people who vote are

---

[10] HB 323. *HB 323, requiring the presentation of a government-issued photographic means of identifications in order to vote before the Senate Election Law and Municipal Affairs Committee*, 2026 Leg., at 5–6 (N.H. February 10, 2026) (both proponents and opponents of HB 323 agree that it could affect the outcome of elections), https://gc.nh.gov/bill_Status/pdf.aspx?id=15266&q=HearingRpt.

19

more likely to continue to do so than those who have not taken that first step,[11] and less likely to vote if they are prevented from voting.[12]

87.    Further, far from increasing voter confidence, HB 323 undermines it. It has been found that laws placing unnecessary burdens on voting lowers confidence in elections because "voters who have a frustrating experience at the polls, people who try to vote and can't, that they are less—they are more likely to report low confidence in election outcomes." *NHYM*, 2026 WL 1500857, at *18 (quoting Dr. Mayer's expert testimony).

88.    This is especially concerning in the context of HB 323, which will burden first-time voters, possibly undermining their confidence in elections for the rest of their lives.[13]

**HB 323 and the April 23 Directive Disproportionately
Affect Young Voters**

89.    As of July 2023, approximately 15.6% of eighteen-year-olds in New Hampshire were registered to vote. This is below the national average for eighteen-year-old registration.

---

[11] Alexander Coppock & Donald P. Green, *Is Voting Habit Forming? New Evidence from Experiments and Regression Discontinuities*, 60 American J. of Pol. Sci. 1044, 1046 (2016) ("The overall pattern [of the data] leaves little doubt that voting is habit forming."), https://alexandercoppock.com/coppock_green_2016.pdf.

[12] Michael G. Miller et al, *Restrictive Mail Voting Rules Burden Minority Voters: Evidence From Texas*, 27–28 (Working Paper, Brennan Center, 2024), https://www.brennancenter.org/sites/default/files/2024-03/Miller%20-%20Texas_Rejections.pdf.

[13] *Id.*

90.    This is part of a national crisis of under-registration among 18-year-olds that is only getting worse.[14]

91.    In part, this is because young people are driving less. Between 2012 and 2022, there was a 28% decrease in teenagers applying for and earning their driver's licenses in New Hampshire.[15]

92.    This follows a wider national trend of young people waiting until they are in their early twenties to obtain a driver's license.[16]

93.    According to the U.S. Department of Transportation, as of 2024 there were 24,496 New Hampshire residents with driver's licenses between ages 18 and 19, and 71,424 with driver's licenses between ages 20 and 24. By comparison, the U.S. Census Bureau reports that in 2024 there were 32,951 New Hampshire residents between the ages 18 and 19, and 87,828 between 20 and 24. Accordingly, approximately **26%** of New Hampshire residents 18 to 19 years of age did not have a driver's license, and almost **19%** of New Hampshire/ residents between the ages of 20 and 24 did not have a driver's license. [17] Thus, approximately **20–25%** of New

---

[14] Laura Brill, *Four million Americans will turn 18 this year. Why aren't we registering them to vote?*, The Guardian (June 21, 2026), https://www.theguardian.com/commentisfree/2026/jun/21/young-people-voter-registration.

[15] Sara Cernikoff, *Gen Z is less likely to have a driver's license. Here's why*, USA Today (May 17, 2024), https://www.usatoday.com/story/graphics/2024/05/17/gen-z-less-likely-get-drivers-license/73678202007/.

[16] Madeline Holcombe, *Teens are delaying getting their driver's licenses. Parents want to know why*, CNN (April 5, 2025), https://www.cnn.com/2025/04/05/health/teens-delay-driving-wellness.

[17/]    U.S. Census Bureau, Population Division, *Annual Estimates of the Resident Population by Single Year of Age and Sex for New Hampshire: April 1, 2020 to July 1, 2025* (SC-EST2025-SYASEX-33),

Hampshire residents who could benefit from being able to continue to use a student ID would now be significantly burdened in the exercise of their franchise as a result of HB 323. By comparison, the number of New Hampshire residents without driver's licenses over the age of 25 – who most typically are not students – is substantially lower, as the percentage of New Hampshire residents between the ages of 25 and 64 without driver's licenses ranges from only 4.4% to 6.5%.[18/]

94.    HB 323 treats young voters differently than older voters in other ways as well. Only one other age bracket experiences high rates of non-drivers: 65 and older. Yet unlike young voters, these voters are afforded multiple accommodations under New Hampshire law, all intended to ensure that they do not lose access to the polls just because they do not have driver's licenses.

95.    New Hampshire's strict rules regarding photo identification are not applied equally to all age populations.

96.    Under the laws regulating the voter registration and ballot processes, RSA 654:12, RSA 659:13, older voters are entitled to exemptions that make it easier for them to vote.

---

https://data.census.gov/table/ACSST5Y2024.S0101?g=040XX00US33&tid=ACSST5Y2024.S0101; U.S. Census Bureau, Population Division, (Released June 2026); *Licensed Drivers by State, Sex, and Age Group 1994-2024,* DL-22, Federal Highway Administration, Office of Highway Policy Information (Updated June 24, 2026), https://www.fhwa.dot.gov/policyinformation/statistics/2024/dl22.cfm.

[18/]    *Supra* note 17.

97.    For example, in order to register to vote, residents of nursing homes can have their identity confirmed "by the administrator of the facility" without presenting identification cards of any kind. RSA 654:12(I)(d).

98.    The expiration rules of RSA 659:13(II)(a) do not apply to voters over age sixty-five; they can use long-expired driver's licenses to confirm their identity at the polls.

99.    People over age sixty-five who turn in their driver's licenses are not subject to a fee when applying for a state-issued identification card, RSA 260:21(V)(a) and do not have to go through the voucher process to obtain a fee waiver.

100.    Instead of doing the same for young people, New Hampshire has now stripped them of the ability to register and to vote using a type of identification widely available to this segment of the population.

101.    Despite allowing older voters to vote without photo identification and to use expired identification cards, there is no example of any voter committing voter fraud by misusing these exemptions.

102. No lawmaker has raised concerns about older voters using these lenient rules to commit voter fraud.

103.    Plaintiff does not in any way oppose these accommodations for older voters and in fact supports them. But by providing accommodations to older voters while at the same time passing burdensome laws expressly targeting young voters and making it difficult for young voters to register and vote, New Hampshire is

23

engaging in unconstitutional age discrimination in the ability of young voters to exercise the fundamental right to vote. Such disparate and adverse treatment of young people regarding such an essential right violates the constitutional protections afforded by the First, Fourteenth and Twenty-sixth Amendments.

104.    This unequal treatment is exacerbated by New Hampshire's reliance on election day registration. RSA 654:7-a; RSA 654:7-B.

105.    Because New Hampshire offers election day registration, it is exempt from certain requirements of the National Voter Registration Act; without it, New Hampshire would have to offer voter registration at the DMV or at any public office that provide public assistance or services to people with disabilities, and it would have to allow voter registration by mail. It does not offer registration via any of these means, except mail-in registration for voters with a bona fide excuse, such as disability.

106.    New Hampshire's election system is "designed to rely intensely on election day registration." *NHYM*, 2026 WL 1500857, at *31.

107.    Though New Hampshire voters widely rely on election day registration, young voters utilize election day registration at an even higher rate than the general population of voters.

108.    HB 323 and Secretary Scanlan's April 23 directive functionally bar young voters who lack access to a driver's license or passport, but have a student identification card, from election day registration by requiring them to obtain a secondary identification that cannot be obtained on election day.

24

109.   Because New Hampshire relies on election day registration, voters who do not or cannot utilize same-day registration are forced to navigate a system with one of the highest "costs of voting" in the country. *NHYM*, 2026 WL 1500857, at *31.

110.   This creates a discriminatory system. Older voters with much greater access to driver's licenses can take advantage of New Hampshire's same-day registration system.

111.   Voters over age sixty-five can use their long-expired driver's licenses to participate in the same-day registration system. RSA 659:13(II)(a).

112.   In contrast, now that they cannot use their student IDs to prove their identity at the polls, young voters without access to a driver's license have no mode of identification they would readily carry with them such that they can take advantage of election day registration.

## The Legislative Record Contains No Evidence of Fraud, and No Evidence HB 323 Would Improve Voter Confidence, But Abundant Evidence of Material Burdens on Young Voters

113.   Legislators were fully aware that HB 323 would burden young voters, make it difficult for them to vote, and fail to advance any legitimate state interest.

114.   Tracey Walsh, Hanover Town Clerk, testified before the New Hampshire legislature to oppose HB 323. She also testified that the Town clerk's Association opposed HB 323. *HB 323, requiring the presentation of a government-issued photographic means of identifications in order to vote before the Senate Election Law and Municipal Affairs Committee*, 2026 Leg., at 2 (N.H. February 10,

2026) ("HB 323 February 10 Hearing"),

https://gc.nh.gov/bill_Status/pdf.aspx?id=15266&q=HearingRpt.

115.   Ms. Walsh oversees elections in Hanover, a town in which most Dartmouth students live and vote.

116.   The Town Clerk's Association is made up of clerks who run elections in towns and cities throughout New Hampshire. RSA 654:8.

117.   Ms. Walsh testified that the bill will disenfranchise voters, especially first-time voters. *Id.* She testified that Dartmouth students would have to find a way to the DMV office more than a half-hour away to obtain a driver's license. She also testified that the distance to the DMV and the difficulty that young people face in obtaining non-student identification cards burdens disabled students. *Id.* at 2–3.

118.   No one produced any testimony or evidence that HB 323 would further any legitimate state interest.

119.   During the debates on HB 323, no one—including the bill's sponsors and other supporters—identified any instance of any voter using a student identification card to vote fraudulently.

120.   During the debates on HB 323, no one produced any evidence of voter fraud at all.

121.   There simply is no evidence of significant voter fraud in New Hampshire elections.

122.   In the two general presidential elections in 2016 and 2020, New Hampshire had the third highest turn-out percentage in the country; more than 1.5 million ballots were cast between the two elections.[19]

123.   Shortly after the 2020 election, then-Governor Christopher Sununu stated that, "[h]ere in New Hampshire our elections are secure, accurate, and reliable—there is no question about it."[20]

124.   In 2024, more than 60% of eligible New Hampshire residents cast votes in the general election, a higher turnout than the prior two presidential elections.

125.   There was no reported fraud or disruptions.[21]

126.   In an opinion issued on May 28, 2026, after a bench trial in *New Hampshire Youth Movement v. Scanlan*, a federal judge found that the defendants, who are the same defendants named in in this complaint, "agreed that instances of voter fraud are 'miniscule' and virtually non-existent in [New Hampshire.]" 2026 WL 1500857, at *17.

127.   In that opinion, the judge found that:

---

[19] N.H. Secretary of State, Voter Turnout Ranking of States: 1996 – 2020 (April 19, 2021), https://www.sos.nh.gov/sites/g/files/ehbemt561/files/documents/2022-04/voter-turnout-charts-4-19-21.pdf.

[20] Press Release, Governor Chris Sununu, Governor Chris Sununu Statement Following Certification of 2020 Election Results (Dec. 20, 2020), https://www.governor.nh.gov/news-and-media/governor-chris-sununu-statement-following-certification-2020-election-results.

[21] Tom Jarvis, *Record Voter Turnout and Smooth Operations Define New Hampshire's 2024 Election*, N.H. Bar Ass'n (2024), https://www.nhbar.org/record-voter-turnout-and-smooth-operations-define-new-hampshires-2024-election/.

- "Wrongful voting, meaning unqualified voters intentionally or unintentionally casting ballots, is extremely rare in New Hampshire," and that only forty-seven cases could be identified between 1998 and 2024, a period in which 8.3 million voters were cast. 2026 WL 1500857, at *17;

- Noncitizen voting "is essentially non-existent," with *at most* 26 instances in New Hampshire between 1998 and 2024, *id.*;

- "Voter fraud, meaning unqualified voters intentionally casting ballots while knowing that they are not entitled to vote, is even rarer in New Hampshire," *id.*;

128.    During debates on HB 323, no one produced any evidence that student identification cards were inferior to other forms of valid identification at establishing a voter's identity.

129.    While Senator Gray claimed that driver's licenses have "security features" that make them more reliable than student identification cards, he failed to specify any such "security features." HB 323 February 10 Hearing, at 5.

130.    Further, as discussed above, students can use their student identification cards to prove their identity when they apply for a driver's license. If they are insecure, then so must New Hampshire's system of issuing driver's licenses, an assertion that no one made during consideration of HB 323.[22]

---

[22] New Hampshire Department of Motor Vehicles, *Identity and Residency Requirements*, https://www.dmv.nh.gov/sites/g/files/ehbemt416/files/inline-documents/dsmv634b.pdf.

28

131.    The other forms of accepted identification in RSA 659:13 are not inherently more reliable as forms of identification than student identification cards. For instance, New Hampshire accepts passports to prove identity, RSA 659:13(II)(a)(4), even though they only need to be renewed every ten years,[23] and under New Hampshire law can be used to prove identity for up to five years after they expire. RSA 659:13(II)(a).

132.    Thus, after HB 323, a thirty-two-year-old voter can use an expired passport they obtained when they were eighteen to prove their identity, but a current student cannot use their current student identification card to prove their identity.

133.    Student identification cards are relied upon and commonly used to allow access to high school and university campuses, including to sensitive areas such as dormitories, laboratories, and locker rooms. No evidence has been presented that schools do not properly verify student identity before issuing a student ID. Indeed, in many if not all cases a college or university will require tuition payments be up to date before issuing a student ID.

134.    Tracey Walsh, the Hanover Town Clerk, testified in opposition to HB 323, explaining that Dartmouth College verifies a student's identity before issuing student identification. HB 323 February 10 Hearing, at 3.

---

[23] United States Department of State, *Frequently Asked Questions about Passport Services*, https://travel.state.gov/content/travel/en/passports/passport-help/faqs.html.

135.    Grace Murray, a former student at Plymouth State University, testified to the New Hampshire Senate in opposition to HB 323 that when she lost her ID, she had to provide her name, student number, proof of enrollment, and proof of campus residency to receive a replacement. *Id.* at 6.

136.    In 2022, Secretary Scanlan organized a "Special Committee on Voter Confidence."

137.    That Committee took evidence from across the state at nine different public hearings and took continuous input from the public.

138.    That Committee found that New Hampshire voters generally have high confidence in New Hampshire elections and that there is no evidence of widespread voter fraud.[24]

139.    As part of its recommendations, the Committee did not suggest that public confidence or security would be increased by additional voter identification requirements, or by eliminating student identification cards as a valid form of identification.

140.    That report was adopted by all but one member of the committee. The argument presented by the lone dissenting member was that "out of state" students

---

[24] Special Committee on Voter Confidence, *Report of the Special Committee on Voter Confidence*, (Dec. 22, 2025), https://www.sos.nh.gov/sites/g/files/ehbemt561/files/2022-12/final-report.pdf.

30

should not be voting and only "permanent New Hampshire residents" should be allowed to vote.[25]

141.    This lone committee member's proposal would be clearly unconstitutional under both the Equal Protection Clause and the Twenty-Sixth Amendment. *United States v. State of Texas*, 445 F.Supp. 1245, 1260–61 (S.D. Tex. 1978), *summarily affirmed*, *Symm v. United States*, 439 U.S. 1105 (1979); *Dunn v. Blumstein*, 405 U.S. 330, 334 (1972).

142.    These reports were posted on the Secretary of State's website and were easily accessible to legislators prior to passage of HB 323.[26]

## The Legislative Record Contains Multiple Misrepresentations of New Hampshire Election Law

143.    Rather than presenting evidence of any legitimate state interest or considering the burden on the right to vote, lawmakers invented inaccurate rationales for HB 323.

144.    In debates on HB 323, lawmakers argued that student identification cards are unreliable because they are often held onto for long periods of time and may not have expiration dates.[27]

---

[25] Ken Eyring, *Special Committee on Voter Confidence Report*, 3, 4, 5, 10 (Jan. 5, 2023), https://www.sos.nh.gov/sites/g/files/ehbemt561/files/documents/2023-01/final-report-by-ke-remediated.pdf.

[26] New Hampshire Secretary of State, *Special Committee on Voter Confidence*, https://www.sos.nh.gov/elections/special-committee-voter-confidence.

[27] Ethan Dewitt, *NH bill to bar student ID cards to prove voter identity heads to Ayotte's desk*, Valley News (March 8, 2026), https://vnews.com/2026/03/08/nh-senate-republicans-pass-student-id-bill/.

145.    In debates on HB 323, lawmakers presented no evidence that the student identification cards currently in use in New Hampshire regularly lack expiration dates.

146.    Further, insofar as any student identification card did not have an expiration date, it never constituted a valid form of identification under the pre-HB 323 regime. RSA 659:13(II)(a). Plainly, HB 323 was in no way necessary to address a matter which did not and could not occur.

147.    Further, to the extent any student identification card was held on to for more than five years after their expiration date (or issuance date, if there is no expiration date), again they were not valid forms of identification under the pre-HB 323 regime, RSA 659:13(II)(a), and HB 323 was not needed to address this conjured issue.

148.    Moreover, all forms of identification cards—including passports and driver's licenses—are authorized for use to prove ID at the polls in New Hampshire for up to five years after their expiration date.

149.    Voters over the age of 65 are allowed to prove their identity at the polls by using identification that is past the 5-year expiration mark.

150.    During the debate on HB 323, lawmakers repeatedly referenced the registration process,[28] even though HB 323 only amended RSA 659:13, which sets

---

[28] HB 323 February 10 Hearing, at 2 (Representative Wherry argued student identification cards enable fraud by out-of-state voters even though student identification cards do not prove domicile); *id.* at 3 (Senator Lang questioned whether student identification cards prove age, citizenship, identity and domicile, despite student identification cards only being valid for identity).

out the process of obtaining a ballot. *Compare* RSA 659:13 (setting out the requirements to obtain a ballot), *with* RSA 654:12 (setting out the requirements to register to vote).

151.    Representative Berry, a co-sponsor of the bill, claimed that "[s]tudent IDs have no address verification. No citizenship check. No security features."[29]

152.    Proof of identity and proof of domicile are separate components of the voter registration process in New Hampshire and student identification cards were never used to establish domicile or citizenship.

153.    Some forms of photo identification can be used to prove both identity and domicile; some cannot. The fact that some forms of photo identity do not establish domicile has never before rendered that form of identification unusable for the purpose of proving identity.

154.    Under New Hampshire law, student IDs without addresses have never been a valid way to establish domicile.

155.    Out-of-state driver's licenses and passports do not establish current domicile either, but they are still a valid way to establish identity after HB 323. *Compare* RSA 654:12(I)(c) (only New Hampshire driver's licenses or federal identification cards with current addresses—which passports lack—are valid to establish domicile), *with* RSA 654:12(I)(d)(1) (a driver's license from any state may establish identity); RSA 654:12(I)(d)(2) (a passport may establish identity).

---

[29] Ethan Dewitt, *Ayotte signs bill barring use of student IDs to vote*, New Hampshire Bulletin (Apr. 6, 2026), https://newhampshirebulletin.com/briefs/ayotte-signs-bill-barring-use-of-student-ids-to-vote/.

156.   Furthermore, New Hampshire driver's licenses may contain the wrong domicile; for example, if someone moved within the state before expiration of the driver's license, it will contain the wrong address. The voter will need to establish proof of current domicile if they want to register and vote in their new voting district, but it does not render the driver's license unusable as a form of identification.

157.   Under New Hampshire law, student identification cards have never been a valid way to establish citizenship. Nor have driver's licenses, which are still a valid way to establish identity. *Compare* RSA 654:12(I)(a) (driver's licenses, including from New Hampshire, do not establish citizenship), *with* RSA 654:12(I)(d) (a driver's license from any state may establish identity); *see also* RSA 659:13(a)(1) (a driver's license from any state may establish identity).

158.   In debates on the bill, Senator Lang falsely stated that voters could get free voter identification cards from their town clerk. HB 323 February 10 Hearing, at 5.

159.   In fact, as discussed above, young voters can only receive state-issued identification cards from the DMV and can only receive them for free if they can and do complete the burdensome process discussed *supra*.

### HB 323 is the Latest Attempt in an Ongoing Movement to Disenfranchise Young Voters in New Hampshire

160.   On March 23, 1971, Congress submitted a proposed constitutional amendment to the states to lower the voting age to eighteen for federal and state

elections. The states promptly ratified the proposal, which became the Twenty-Sixth Amendment to the Constitution on June 30, 1971.

161.   Section 1 of the Twenty-Sixth Amendment provides: "The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age."

162.   During debates on the passage of the Twenty-Sixth Amendment, concerns were raised that the politics of "college towns" might be fundamentally altered by allowing undergraduates to vote. "[T]he candid response in debate was that if students 'satisfy the residency requirement of that town obviously they would be entitled to vote.'" *Walgren v. Howes*, 482 F.2d 95, 102 (1st Cir. 1973) (quoting 117 Cong. Rec. 7538–39, 7547).

163.   Nonetheless, after the ratification of the Twenty-Sixth Amendment, states and municipalities across the country attempted to disenfranchise young voters indirectly by making it difficult or impossible for them to prove their domicile.

164.   These attempts failed because courts throughout the United States recognized that the Twenty-Sixth Amendment meant what it says: discrimination on the basis of age in voting, whether blatant or subtle, is unconstitutional. *United States v. State of Texas*, 445 F.Supp. 1245, 1260–61 (S.D. Tex. 1978), *summarily affirmed*, *Symm v. United States*, 439 U.S. 1105 (1979) (a registrar's practice of refusing to register the vast majority of students to vote on the grounds students could not generally establish domicile violated the Twenty-Sixth Amendment);

*Sloane v. Smith*, 351 F. Supp. 1299, 1305 (M.D. Pa. 1972) (holding that county procedures that used special rules for proving domicile only applicable to students violated the Twenty-Sixth Amendment); *Jolicoeur v. Mihaly*, 5 Cal. 3d 565, 575, 488 P.2d 1, 7 (1971) (holding that a policy of considering the domicile of an unmarried person under twenty-one to be the domicile of their parents violated the Twenty-Sixth Amendment); *see also Bright v. Baesler*, 336 F. Supp. 527, 533 (E.D. Ky. 1971) (holding that special rules for proving domicile only applicable to students violated the Equal Protection Clause).

165.    For decades, New Hampshire has attempted to use similar methods to suppress young voters.

166.    In 2013, New Hampshire enacted legislation to limit the access of young voters to the franchise with the passage of Senate Bill 318 ("SB 318"), which required residents to acknowledge on voter registration forms that they were bound by New Hampshire residency requirements to register vehicles and apply for state driver's licenses.

167.    SB 318 was designed to disenfranchise young voters, specifically college students.[30]

---

[30] *AG, House speaker trade barbs over voter law appeal*, WMUR (Sep. 28, 2012, at 10:31 ET) (framing the law as mandating that "college students who come to live in New Hampshire from out of state should register a vehicle and get a driver's license if they want to cast a ballot"), https://www.wmur.com/article/ag-house-speaker-trade-barbs-over-voter-law-appeal/5176800; Jim Malewitz, *Out-of-State Students May Vote in New Hampshire, Judge Rules*, Stateline (Sep. 25, 2012, at 12:00 ET) (reporting that the superior court judge that initially enjoined the ruling held that SB 318 would disproportionately harm students),

168.    The New Hampshire Supreme Court permanently enjoined SB 318 as unconstitutional in *Guare v. New Hampshire*, 167 N.H. 658, 669, 117 A.3d 731, 740–41 (2015).

169.    In 2017, New Hampshire enacted Senate Bill 3 ("SB 3"), which again attempted to burden and restrict young voters. SB 3 required that everyone registering to vote present documentary evidence of "a verifiable act or acts carrying out" their intent to be domiciled in New Hampshire.

170.    In 2020, the New Hampshire Superior Court enjoined enforcement of SB3, finding that its requirement "impacts certain voters more than others," including, among other groups, college students, and that impact rendered the requirement unconstitutional under the New Hampshire Equal Protection Clause given the lack of justification. *League of Women Voters of New Hampshire v. Gardner*, No. 226-2017-CV-00433, 2020 WL 4343486, at *21–*22 (N.H. Super. Apr. 08, 2020).

171.    In 2021, the New Hampshire Supreme Court affirmed the injunction, concluding that SB3 "imposes unreasonable burdens on the right to vote" without being "substantially related to an important governmental objective." *N.H. Democratic Party v. Sec'y of State*, 174 N.H. 312, 331, 262 A.3d 366, 382 (2021).

---

https://stateline.org/2012/09/25/out-of-state-students-may-vote-in-new-hampshire-judge-rules/.

172.    Testimony in support of SB 3,[31] and contemporaneous public reporting,[32] indicate SB 3's purpose was to disenfranchise young voters, specifically college students.

173.    In addition to domicile requirements, false claims of voter fraud have been used to target young voters.

174.    In 2016, Donald Trump falsely claimed that he had won the general election in New Hampshire and that then-Senator Kelly Ayotte similarly had won her re-election for Senate, despite the complete absence of evidence supporting either claim.[33]

175.    Ayotte neither supported nor denied Trump's false claims; instead, her spokesman said, "it's impossible to attribute the outcome to any one factor," but Ayotte claimed that New Hampshire's residency laws should be examined.[34]

---

[31] Rob Wolfe, *N.H. Voter Law Seeks Stricter Proof of Identity*, Valley News (Apr. 19, 2017) (recounting a statement by Representative White, explaining how the bill will disproportionately impact young voters), https://vnews.com/2017/04/19/new-hampshire-mulls-voting-law-9357320; Casey McDermott, *SB3 Hearing Draws Debate Over Student Participation, Message Sent to Young Voters*, New Hampshire Public Radio (Apr. 18, 2017, at 5:53 ET) (former Senate Majority Leader Bob Clegg testifying in support of the bill said that he did not believe college students had a right to vote in the communities they lived in, in direct contradiction to the Twenty-Sixth Amendment), https://www.nhpr.org/nh-news/2017-04-18/sb3-hearing-draws-debate-over-student-participation-message-sent-to-young-voters.

[32] Nik Beimler, *Students oppose voting changes*, Foster's Daily (May 10, 2017, at 11:47 ET), https://www.fosters.com/story/news/2017/05/09/unh-students-rally-against-voting-changes/21075919007/?gnt-cfr=1&gca-cat=p&gca-uir=true&gca-epti=z119101e009400v119101d--91--b--91--&gca-ft=106&gca-ds=sophi.

[33] Katharine Q. Seelye, *Voter Fraud in New Hampshire? Trump Has No Proof and Many Skeptics*, N.Y. Times (Feb. 13, 2017), https://www.nytimes.com/2017/02/13/us/voter-fraud-new-hampshire-gop.html.

[34] *Id.*

176.   At the time, other politicians, including Scott Brown, a former Massachusetts Senator, falsely claimed that tens of thousands of Massachusetts voters, and college students in particular, were illegally voting in New Hampshire.[35]

177.   He provided no evidence that any Massachusetts voter illegally voted in New Hampshire, and certainly no evidence that tens of thousands of Massachusetts voters illegally voted in New Hampshire.

178.   Others, including Steve Duprey and Fergus Cullen, former chairmen of the New Hampshire Republican Party, and Thomas D. Rath, a Republican and former attorney general of New Hampshire, pointed out the absurdity of the claims.[36]

179.   These comments are part of a long-running false narrative that New Hampshire is inundated with young, out-of-state voters.

180.   There has never been any proof or credible allegation that this has occurred.

181.   Having failed to disenfranchise young voters by changing the domicile rules, New Hampshire politicians are now trying to do so by changing the voter ID rules.

182.   In 2024, New Hampshire passed HB 1569, which, among other things, eliminated the ability of voters to use a qualified voter affidavit to prove their citizenship, allegedly to counter voter fraud.

---

[35] *Id.*
[36] *Id.*

183. A federal judge found, at trial, that the affidavit was disproportionately used by young voters. *NHYM*, 2026 WL 1500857, at *30, *32.

184. To mitigate the effects of HB 1569, New Hampshire passed HB 464, which established prior voter registration as proof of citizenship.

185. This created a two-track system: older voters, many of whom may not have access to their birth certificates, were "grandfathered" in and never had to produce documents proving their citizenship. First-time voters, who are overwhelmingly young, were forced to produce documentation. *NHYM*, 2026 WL 1500857, at *30–*32.

186. HB 1569 was permanently enjoined as unconstitutional by a federal judge in 2026, who concluded that "HB 1569's elimination of the [affidavit] is an unjustifiable burden on the right to vote in violation of the First and Fourteenth Amendments." *NHYM*, 2026 WL 1500857, at *39.

187. HB 323 is yet another attempt by the New Hampshire legislature to burden the voting rights of young voters in retaliation for their perceived politics.

## Secretary Scanlan's April 23 Directive is Unlawful and Violates the Separation of Powers Doctrine

188. On April 23, 2026, Secretary Scanlan issued a directive to local officials, which informed them that student identification cards were no longer valid to prove identity during the voter registration process. [37]

189. Local clerks consistently follow directives by the Secretary of State.

---

[37] Press Release, Secretary of State of New Hampshire, Secretary of State Shares Election Resources for New Hampshire Students (April 23, 2026), https://mm.nh.gov/files/uploads/sos/docs/4-23-26-student-flyer-press-release.pdf.

190. The documentation required for registering to vote is governed by RSA 654:12 and was not amended by HB 323, which only struck out the text pertaining to student identification cards in RSA 659:13, dealing with obtaining a ballot.

191. The April 23 directive functionally amends RSA 654:12.

192. The power to pass and amend laws resides solely with the legislature under the New Hampshire Constitution. *New Hampshire Health Care Ass'n v. Governor*, 161 N.H. 378, 386, 13 A.3d 145, 153 (2011) (quoting *O'Neil v. Thomson*, 114 N.H. 155, 160, 316 A.2d 168 (1974)).

193. The legislature has created the office of the Secretary of State and empowered the holder of that office, as relevant here, to prepare educational materials regarding the election laws for voters and municipalities. RSA 652:22; RSA 652:23.

194. The Secretary of State has no independent power to pass or amend election-related statutes and his attempt to do so is *ultra vires*.

195. Insofar as Secretary Scanlan has determined that the phrase "[a]ny other reasonable documentation" in RSA 654:12(I) was functionally amended by HB 323, that is both incorrect as a matter of law and in excess of his statutory authority, in violation of the Separation of Powers provision of the New Hampshire Constitution. N.H. Const. Pt. 1, art. 37th.

**HB 323 Requires Open Democracy to Divert Resources**

196. Open Democracy's mission is to bring about and safeguard political equality for the people of New Hampshire. Open Democracy believes that an open,

41

accountable, and trusted democratic government "of, by, and for the people," with an electoral system that allows eligible citizens to vote and have their vote counted, is essential to the organization's mission. Zink Aff. at 2.

197. To accomplish its mission, Open Democracy provides a variety of services that educate prospective voters about the registration and voting processes, and assists them to register and vote. Zink Aff. at 3. Open Democracy focuses its efforts on groups who historically have lower voter turnout, including young voters and low-income voters. Zink Aff. at 4. The organization engages with prospective voters across New Hampshire, plans and hosts events and programming for its constituencies, develops and prints voter educational materials, and trains its volunteers on New Hampshire's voting rules. Zink Aff. at 5.

198. One of Open Democracy's core services is providing assistance to eligible young people in exercising their voting rights. Zink Aff. at 6.

199. Open Democracy employs Sam Cassin full time as a High School Voter Registration Coordinator. Mr. Cassin's primary job is to help organize and run high school voter registration drives across New Hampshire, which occur every year. Zink Aff. at 6.

200. The drives are usually student-led, and Open Democracy works with students to bring the Supervisors of the Checklist, elected officials responsible for the functions of registering voters and correcting the checklist of qualified voters in New Hampshire, to these schools to register eligible high school students. Zink Aff. at 8.

42

201. While Open Democracy aims to create self-sustaining drives that are rooted in local traditions—such as making voter registration part of the official graduation process along with obtaining gowns and turning in old library books—the majority of drives change significantly year-to-year, requiring significant effort on the part of Open Democracy to ensure they run smoothly.

202. Only an estimated 8.5 percent of 18-year-olds were registered to vote in New Hampshire as of June, 2022, which is substantially lower than in peer states. Zink Aff. at 7.

203. In part because of voter registration drives led by Open Democracy in the 2022-2023 school year, by July 2023, approximately 15.6% of eighteen-year-olds in New Hampshire were registered to vote. Zink Aff. at 10.

204. Though Open Democracy succeeded in registering a number of students, this is still below the national average for eighteen-year-olds. *Id.*

205. In 2024, Open Democracy helped students lead forty-one registration drives. Zink Aff. at 9.

206. In the spring of 2026, Open Democracy helped students lead twenty-two voter registration drives. *Id.*

207. These gains are threatened by HB 323 and the April 23 directive.

208. Before HB 323 and the April 23 directive took effect, students could use their student identification cards to establish their identity when registering to vote and obtaining a ballot so long as the card otherwise complied with New Hampshire's election laws.

209.    Under HB 323 and the April 23 directive, students seeking to register to vote or to obtain a ballot may not rely on their student identification cards to establish their identity. Instead, they must present a driver's license, a state-issued identification card, a passport, or an armed services identification card.

210.    Students who only had student identification cards were turned away even before HB 323 went into effect.

211.    In response to HB 323, Open Democracy has had to change the materials it provides voting registration drive leaders. Zink Aff. at 12.

212.    Open Democracy must reeducate all of its existing partners, including local high schoolers, partnering adults, and local clerks. *Id.* at 12, 13.

213.    As a result, it has been more difficult for Open Democracy to complete its core mission of registering young voters because it has diverted time and resources to revising its materials and educating existing partners. Zink Aff. at 20.

214.    Open Democracy cannot help students without a driver's license obtain a driver's license, given the requirements of driving hours, passing a written exam, as well as the functional requirement of driver's education, which can cost up to $1,100.[38] Zink Aff. at 14.

---

[38] 1st Gear Driving, *Teen Drivers Ed Classes*, https://www.1stgeardriving.com/teen-drivers-ed-classes.phtml. New Hampshire Division of Motor Vehicles, *Driver Education*, https://www.dmv.nh.gov/drivers-licensenon-driver-ids/apply-your-first-drivers-licensenon-driver-id/driver-education#:~:text=Driver%20Education%20is%20helpful%20at,an%20approved%20driver%20education%20program.

215.   Although Open Democracy is organizing drives to raise funds to help students without a driver's license obtain a passport, given the fee, waiting period, specific photo requirements,[39] and their own scarce resources, it is not a viable option at scale. Zink Aff. at 16.

216.   Instead, HB 323 and Secretary Scanlan's April 23 directive is forcing Open Democracy to focus its efforts on helping young voters obtain state-issued identification cards from the DMV. Zink Aff. at 17.

217.   As discussed above, young voters without driver's licenses or passports are eligible for a voucher from their local town or city clerk that allows them to waive the $20 fee for a state identification card.

218.   Not all local clerks are aware of the voucher system. Open Democracy has educated voters on how to obtain a voucher from their local clerk, only for the local clerks to turn the voters away on the belief that such vouchers do not exist. As a result, Open Democracy is also expending time and resources to educate local clerks about the voucher system, as well. Zink Aff. at 19.

219.   In addition, Open Democracy is fundraising to pay the $20 fee for young voters so that they do not have to go through the onerous voucher system. *Id*.

220.   Open Democracy is reaching out to local organizations that work with people with disabilities to help young students with disabilities obtain the identification they will need to register to vote.

---

[39] United States Department of State, *Apply for Your Adult Passport*, https://travel.state.gov/content/travel/en/passports/need-passport/apply-in-person.html.

221.   In New Hampshire, voting registration is run locally by cities and towns. RSA 654:8.

222.   Most city and town clerks or local supervisors of the checklist are willing and able to come to high schools to perform voting registration drives.

223.   In contrast, both driver's licenses and state-issued identification cards are issued by the DMV, which has only twelve locations throughout the entire state that offer licensing services with regular hours, all of which are fully appointment based.[40]

224.   DMV staff cannot come to high schools to receive paperwork for identification cards and issue state-issued identification cards.

225.   In many cases, Open Democracy cannot offer direct help to students in reaching the DMV, especially during school hours, where safety and logistical concerns make organizing off-campus events difficult. Zink Aff. at 15.

226.   Under Secretary Scanlan's April 23 directive, Open Democracy's core registration assistance services to young voters who lack access to driver's licenses or passports will be less effective.

227.   Students without driver's licenses may decide not even to approach the voter registration table if they know that their student identification card is not valid; Open Democracy would not have the opportunity to help them with alternatives.

---

[40] New Hampshire Division of Motor Vehicles, *Hours and Locations*, https://www.dmv.nh.gov/hours-and-locations.

46

228. Open Democracy will be forced to redirect and expend significant resources to address the law's effect on this core service. Zink Aff. at 20.

229. Many of Open Democracy's registration drives occur in close proximity to elections, when there would not be sufficient time for these students to obtain a driver's license, passport, or a state-issued identification card.

230. Mitigating the harm of HB 323 on the provision of these services would necessarily draw resources away from Open Democracy's work involving other organizational priorities, including its advocacy for campaign finance reforms and efforts to secure fair districting maps. Zink Aff. at 20.

231. Accordingly, despite expenditures and diversion of resources to mitigate the effect of HB 323, the law would make it effectively impossible for Open Democracy to successfully assist many eligible young voters in registering to vote. *Id.*

## CLAIMS FOR RELIEF

### COUNT I

**Unjustifiable Burden on the Right to Vote**
**U.S. Const. Amend. I, XIV, 42 U.S.C. § 1983**
**(As to all Defendants)**

232. Plaintiffs reallege and incorporate by reference the allegations set for in all prior paragraphs of this Complaint.

233. A court considering a challenge to a state election law must carefully balance the character and magnitude of injury to the First and Fourteenth

Amendment rights that the Plaintiffs seek to vindicate against the justifications put forward by the state for the burdens imposed by the statute. *See, e.g.*, *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

234.    "However slight [the] burden may appear, . . . it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., controlling op.) (quotation marks omitted).

235.    HB 323 and the April 23 directive impose a disparate and unjustifiable burden on the right to vote in removing student identification cards as valid forms of identification during the registration and voting processes.

236.    Many of the significant number of young New Hampshire voters who lack access to a driver's license or a passport rely on their student identification card during the registration and voting process, especially in the context of same-day registration and voting. HB 323 would deny these eligible voters the right to register and vote in elections.

237.    By removing student identification as a means of establishing identity, the state is forcing young voters to pay sums of money and/or deal with significant logistical challenges simply to be able to exercise the most fundamental of constitutionally guaranteed rights.

238.    HB 323 and the April 23 directive will directly harm Open Democracy's ability to provide their core services, and will require them to dedicate more resources toward efforts to assist voters who are forced to navigate the burdensome

restrictions imposed by the removal of student identification as a valid form of identification.

239. These burdens are not justified by any legitimate or sufficient state interest.

## COUNT II

### Unconstitutional Discrimination on the Basis of Age
### U.S. Const. Amend. XXVI, 42 U.S.C. § 1983
### (As to all Defendants)

240. Plaintiffs reallege and incorporate by reference the allegations set forth in all prior paragraphs of this Complaint.

241. The Twenty-Sixth Amendment to the United States Constitution guarantees that "[t]he right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age."

242. The legal test governing Twenty-Sixth Amendment claims should be the prevailing test for voting rights at the time the amendment was passed, not subsequent tests interpreting the content of other amendments passed in different constitutional eras.

243. At the time of the Twenty-Sixth Amendment's passage, if there was "a condition, not insignificant, disproportionately affect[ing] the voting rights of citizens specially protected by a constitutional amendment, the burden must shift to the governmental unit to show how the statutory scheme effectuates, in the least

49

drastic way, some compelling governmental objective." *Walgren v. Howes*, 482 F.2d 95, 102 (1st Cir. 1973). (citation omitted)

244. . Furthermore, "if the court were to find the burden of such a significant nature as to constitute an 'abridgement,' it presumably would not take the additional step of considering the adequacy of governmental justification." *Id.*

245. HB 323 and Secretary Scanlan's April 23 directive disproportionately affect young voters—the voters the Twenty-Sixth Amendment was passed to protect.

246. There is no compelling interest justifying HB 323 or Secretary Scanlan's April 23 directive.

247. Even if this Court chooses to apply the contemporary test for Fifteenth Amendment claims, plaintiffs still prevail.

248. As alleged above, HB 323 creates a material burden on the right to vote. A material burden is an abridgment of the right to vote under the Fifteenth Amendment to the United States Constitution.

249. The text of the Twenty-Sixth Amendment differs only in its subject from the Fifteenth Amendment, which forbids "den[ying] or abridg[ing]" the right to vote "on account of race, color, or previous condition of servitude." Therefore, a material burden is an abridgment of the right to vote under the Twenty-Sixth Amendment as well.

250. In considering whether the abridgment is the result of discriminatory animus, a court will consider disparate impact, historical background, and

legislative history. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–68 (1977).

251.   The burden of HB 323 falls disproportionately on young people, particularly those under twenty-one, the precise age group the Twenty-Sixth Amendment was passed to protect. In contrast, New Hampshire extends several privileges to make voting easier for older voters.

252.   In *Guare v. New Hampshire*, 167 N.H. 658, 669, 117 A.3d 731, 740–41 (2015), and *N.H. Democratic Party v. Sec'y of State*, 174 N.H. 312, 331, 262 A.3d 366, 382 (2021), the New Hampshire Supreme Court rejected attempts by the New Hampshire legislature to impose burdens on young voters. Similarly, HB 1569 disproportionately affected young voters. This bill marks a continuation of those attacks.

253.   The legislature passed this bill despite having no evidence that student identification cards are less reliable markers of identity, but with significant evidence that the bill would disproportionately affect young people.

254.   The legislature justified HB 323 by relying on blatant misrepresentations of the system governing New Hampshire elections. It is not credible that the majority of the legislature and the Governor—a former Attorney General of New Hampshire—are ignorant of the statutory rules for elections in New Hampshire.

255.   The historical background of age discrimination, the disparate impact of HB 323 on young voters, and the lack of evidence and outright

misrepresentations in the legislative record—along with the dismissal of the burdens HB 323 would put on young voters in particular—prove discriminatory animus.

## COUNT III

### Unconstitutional Discrimination on the Basis of Age
### U.S. Const. Amend. XIV, § 1, 42 U.S.C. § 1983
### (As to all Defendants)

256.   Plaintiffs reallege and incorporate by reference the allegations set forth in all prior paragraphs of this complaint.

257.   The Fourteenth Amendment of the United States Constitution guarantees "equal protection of the laws." This includes "a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972) (collecting cases).

258.   HB 323 disproportionately affects young voters, who lack access to driver's licenses at significantly higher rates than other age groups.

259.   New Hampshire maintains several exemptions and special protections for older voters, including free voting identification cards without applying for a voucher, preferential access to vouchers, and a complete waiver of the identification requirement for residents of nursing homes.

260.   With HB 323 and the April 23 directive, New Hampshire simultaneously continues to privilege older voters while discriminating against younger voters by invalidating a form of identification disproportionately used by eighteen to twenty-five-year-olds.

52

261.    The legislature passed this bill despite having no evidence that student identification cards are less reliable markers of identity, but with significant evidence that the bill would disproportionately affect young people.

262.    The legislature justified HB 323 by relying on blatant misrepresentations of the system governing New Hampshire elections. It is not credible that the majority of the legislature and the Governor—a former Attorney General of New Hampshire—are ignorant of the statutory rules for elections in New Hampshire.

263.    There is no rational basis supporting HB 323; it can only be justified on the basis of discriminatory animus against young voters.

264.    Laws that lack a rational basis violate the Equal Protection Clause.

## COUNT IV

**Violation of Separation of Powers**
**N.H. Const. Pt. 1, art. 37th**
**(As to Secretary Scanlan)**

265.    Plaintiffs reallege and incorporate by reference the allegations set forth in all prior paragraphs of this Complaint.

266.    Under the New Hampshire Constitution, "the legislature [is vested] with the 'supreme legislative power,' which specifically comprises the power to make laws, name certain civil officers and define their duties, assess taxes, and make appropriations." *New Hampshire Health Care Ass'n v. Governor*, 161 N.H. 378, 386, 13 A.3d 145, 153 (2011) (quoting *O'Neil v. Thomson*, 114 N.H. 155, 160, 316 A.2d 168 (1974)).

53

267. The legislature has created the office of the Secretary of State and empowered the holder of that office, as relevant here, to prepare educational materials regarding the election laws for voters and municipalities. RSA 652:22; RSA 652:23. The Secretary of State has no independent power to pass election-related statutes or amend them, and any effort to do so is *ultra vires.*

268. The Secretary of State has issued a directive to local municipalities that HB 323 has amended RSA 654:12 (governing the registration process) as well as RSA 659:13 (governing the voting process) and student identification cards are no longer valid forms of identification for registering to vote.

269. That directive has been and will be followed by local clerks.

270. This guidance is incorrect as a matter of law, as HB 323 only amends RSA 659:13.

271. Insofar as Secretary Scanlan has determined that the phrase "[a]ny other reasonable documentation" in RSA 654:12(I) was functionally amended by HB 323, that is both incorrect as a matter of law and in excess of his statutory authority, in violation of the Separation of Powers provision of the New Hampshire Constitution. N.H. Const. Pt. 1, art. 37th.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(a)    Declare that HB 323 and Secretary Scanlan's April 23 directive unconstitutional burden the right to vote, in violation of the First and Fourteenth Amendments to the United States Constitution.

54

(b)      Declare that HB 323 and Secretary Scanlan's April 23 directive violate the Twenty-Sixth Amendment to the United States Constitution.

(c)      Declare that HB 323 and Secretary Scanlan's April 23 directive violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

(d)      Declare that Secretary Scanlan acted without statutory authority and violated the Separation of Powers provision in the New Hampshire constitution when he issued the April 23 directive that purports to extend the ban on student identification cards to the registration process described in RSA 654:12.

(e)      Issue preliminary and permanent injunctions as necessary and appropriate to prohibit Defendants from implementing or enforcing HB 323, including by extending its limitations to RSA 654:12, and to issue appropriate guidance to local authorities.

(f)      Award Plaintiffs attorneys' fees and costs of suit in this action pursuant to 42 U.S.C. § 1988; and

(g)      Grant such other and further relief as the Court deems just and proper.


Dated: August 11, 2026                    Respectfully submitted,

                                          */s/ Henry Quillen*
                                          Henry C. Quillen (Bar No. 265420)
                                          WHATLEY KALLAS, LLP
                                          159 Middle Street, Suite 2C
                                          Portsmouth, NH 03801
                                          Tel: (603) 294-1591
                                          Fax: (800) 922-4851

hquillen@whatleykallas.com

Ben Horton (to apply *pro hac vice*)
John Bonifaz (to apply *pro hac vice*)
Ben Clements (to apply *pro hac vice*)
Courtney Hostetler (to apply *pro hac vice*)
FREE SPEECH FOR PEOPLE
28 S. Main Street, Suite 200
Sharon, MA 02067
Tel: (617) 244-0234
chostetler@freespeechforpeople.org
bhorton@ freespeechforpeople.org
bclements@freespeechforpeople.org
jbonifaz@freespeechforpeople.org

Michael Gardener (to apply *pro hac vice*)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Tel: (617) 348-1642
msgardener@mintz.com

Yeilee Woo (to apply *pro hac vice*)
Sherwet H. Witherington
 (to apply *pro hac vice*)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
919 Third Avenue
New York, New York 10022
Tel: (212) 692-8153; (212) 692-8188
ywoo@mintz.com
shwitherington@mintz.com

*Attorneys for Plaintiff*
*Coalition for Open Democracy*

56