### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| _____ ) | |
| **Coalition for Open Democracy,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | **Case No. 1:26-cv-647** |
| vs. ) | |
| ) | |
| **David M. Scanlan, in his official** ) | |
| **capacity as New Hampshire** ) | |
| **Secretary of State and John** ) | |
| **Formella, in his official capacity** ) | |
| **as New Hampshire Attorney** ) | |
| **General,** ) | |
| ) | |
| Defendants. ) | |
| _____ | |

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
### <u>MOTION FOR A PRELIMINARY INJUNCTION</u>

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................... 1

LEGAL STANDARD................................................................................................. 2

I.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ...................... 2

     A.    Count I: HB 323 Unconstitutionally Burdens Young People's
First and Fourteenth Amendment Rights to Vote............................... 2

            i.    HB 323 Fundamentally and Improperly Changed the
Voting System in New Hampshire for Young Voters.................. 3

            ii.    Many young voters do not have a driver's license........................ 5

            iii.    Many young voters do not possess or cannot access
passports. ................................................................................... 7

            iv.    Many young voters do not have veteran's identification. ........... 7

            v.    Obtaining State-Issued IDs is a Significant Burden. .................. 8

            vi.    Banning the Use of Student IDs Furthers No Legitimate
Interest...................................................................................... 12

     B.    Count II: HB 323 Violates The Twenty-Sixth Amendment................. 15

     C.    Count III: HB 323 Violates the Equal Protection Clause of the
Fourteenth Amendment..................................................................... 20

     D.    Count IV: Secretary Scanlan's April 23 Directive Violates the
Separation Of Powers Pursuant to N.H. Const. Pt. 1, art. 37.............. 21

II.     PLAINTIFFS WILL BE IRREPARABLY HARMED IN THE
ABSENCE OF PRELIMINARY RELIEF ...................................................... 21

III.     BALANCE OF HARMS AND THE PUBLIC INTEREST REQUIRE
GRANTING INJUNCTIVE RELIEF AGAINST HB 323 .............................. 22

IV.     NO NEED FOR A BOND................................................................................ 23

V.     PLAINTIFF OPEN DEMOCRACY HAS SUFFERED INJURY FROM
HB 323 AND HAS STANDING.................................................................... 24

CONCLUSION........................................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACLU of Ill. v. Alvarez,*
   679 F.3d 583 (7th Cir. 2012) ................................................................. 22

*Allen v. Waller Cnty.,*
   472 F. Supp. 3d 351 (S.D. Tex. 2020)................................................... 17

*Anderson v. Celebrezze,*
   460 U.S. 780 (1983) ............................................................................ 2, 15

*Anderson ex rel. Dowd v. Boston,*
   375 F.3d 71 (1st Cir. 2004)............................................................... 18, 19

*Burdick v. Takushi,*
   504 U.S. 428 (1992) ................................................................................. 2

*Common Cause R.I. v. Gorbea,*
   970 F.3d 11 (1st Cir. 2020) (per curiam) ......................................... 3, 15

*Count US IN v. Morales,*
   No. 1:25-cv-00864, 2026 WL 1009067 (S.D. Ind. Apr. 14, 2026) .......3, 22

*Count US IN v. Morales,*
   No. 1:25-cv-00864-RLY-MKK, 2025 WL 4710017 (S.D. Ind. Oct. 14,
   2025)..................................................................................................*passim*

*Crawford v. Marion Cnty. Election Bd.,*
   553 U.S. 181 (2008) (Stevens, J op.) ..................................................... 3

*Crowley v. Loc. No. 82, Furniture & Piano Moving, Furniture Store
   Drivers, Helpers, Warehousemen, & Packers,*
   679 F.2d 978 (1st Cir. 1982), *rev'd on other grounds*, 467 U.S. 526
   (1984) ...................................................................................................... 23

*Does 1-6 v. Mills,*
   16 F.4th 20 (1st Cir. 2021) ................................................................... 22

*Dunn v. Blumstein,*
   405 U.S. 330 (1972) ..........................................................................20, 23

*E.Q. v. U.S. Dep't of Homeland Sec.,*
   No. 25-CV-791, 2026 WL 946181 (D.D.C. Apr. 8, 2026) ..................... 25

*Food & Drug Admin. v. All. for Hippocratic Med.*,
603 U.S. 367 (2024) ............................................................... 24

*Guare v. New Hampshire*,
167 N.H. 658 (2015)................................................................ 19

*HCC Specialty Underwriters, Inc. v. Woodbury*,
289 F. Supp. 3d 303 (D.N.H. 2018) ....................................... 23

*League of United Latin Am. Citizens v. Exec. Off. of President*,
808 F. Supp. 3d 29 (D.D.C. 2025) .......................................... 25

*League of Women Voters of N.H. v. Gardner*,
No. 226-2017-CV-00433, 2020 N.H. Super. LEXIS 39 (N.H. Super.
Apr. 8, 2020) ........................................................................... 19

*N.H. Democratic Party v. Sec'y of State*,
174 N.H. 312 (2021)................................................................ 19

*N.H. Health Care Ass'n v. Governor*,
161 N.H. 378 (2011)................................................................ 21

*N.H. Youth Movement v. Scanlan*,
No. 24-CV-291, 2026 WL 1500857 (D.N.H. May 28, 2026)............................*passim*

*Obama for Am. v. Husted*,
697 F.3d 423 (6th Cir. 2012) .................................................. 22

*Reynolds v. Sims*,
377 U.S. 533 (1964) .................................................................. 1

*Sindicato Puertorriqueno de Trabajadores v. Fortuno*,
699 F.3d 1 (1st Cir. 2012)....................................................... 22

*Tully v. Okeson*,
78 F.4th 377 (7th Cir. 2023).................................................... 16

*US Ghost Adventures, LLC v. Miss Lizzie's Coffee LLC*,
121 F.4th 339 (1st Cir. 2024) ................................................... 2

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977) ...................................................... 17, 18, 19

*Walgren v. Howes*,
482 F.2d 95 (1st Cir. 1973)............................................ 15, 16, 17

iii

*We the People PAC v. Bellows,*
40 F.4th 1 (1st Cir. 2022) ........................................................................ 22, 23

**Statutes**

RSA 260:21 ........................................................................................................ 10

RSA 652:23 .......................................................................................................... 4

RSA 654:12 ................................................................................. 4, 5, 8, 9, 21

RSA 659:13 ............................................................................................... 4, 5, 21

U.S. Const. amend. XXVI, § 1 ..................................................................... 15

**Other Authorities**

1st Gear Driving, *Teen Drivers Ed Classes,*
https://www.1stgeardriving.com/teen-drivers-ed-classes.phtml ........................... 7

Alexander Coppock & Donald P. Green, *Is Voting Habit Forming? New
Evidence from Experiments and Regression Discontinuities*, 60
American J. of Pol. Sci. 1044, 1046 (2016),
https://alexandercoppock.com/coppock green 2016.pdf ........................................ 11

Economic and Labor Market Information Bureau, New Hampshire
Employment Security, *Veterans in New Hampshire 2025* (Nov.
2025), https://mm.nh.gov/files/uploads/nhes/documents/veterans-
2025.pdf ........................................................................................................... 8

Federal Highway Administration, Office of Highway Policy
Information, *Licensed Drivers by State, Sex, and Age Group 1994-
2024,* DL-22 (Updated June 24, 2026) ...................................................... 6

*Gen Z & Teen Driving Statistics: 2026 Licensing Trends & Young
Driver Survey*, Mercury Insurance Co., (July 8, 2026),
https://www.mercuryinsurance.com/resources/auto/gen-z-driving-
statistics.html ................................................................................................ 6

Hearing on H.B. 323 Before the S. Election Law & Mun. Affairs
Comm., 2026 Reg. Sess. (N.H. Feb. 10, 2026),
https://gc.nh.gov/bill_Status/pdf.aspx?id=15266&q=HearingRpt ........................ 9

Michael G. Miller et al, *Restrictive Mail Voting Rules Burden Minority
Voters: Evidence from Texas* (Working Paper, Brennan Center,
2024), https://brennancenter.org/sites/default/files/2024-
03/Miller%20-%20Texas Rejections.pdf ............................................................ 11

New Hampshire Division of Motor Vehicles, *Driver Education,*
https://www.dmv.nh.gov/drivers-licensenon-driver-ids/apply-your-first-drivers-licensenon-driver-id/driver-education ................................................. 7

New Hampshire Division of Motor Vehicles, *Hours and Locations,*
https://www.dmv.nh.gov/hours-and-locations ........................................................... 9

New Hampshire Division of Motor Vehicles, *Identity and Residency Requirements,* (June 2023),
https://www.dmv.nh.gov/sites/g/files/ehbemt416/files/inline-documents/dsmv634b.pdf .................................................................................. 9, 14

Press Release, Secretary of State of New Hampshire, Secretary of State Shares Election Resources for New Hampshire Students (April 23, 2026), https://mm.nh.gov/files/uploads/sos/docs/4-23-26-student-flyer-press-release.pdf ............................................................... 5

Sara Chernikoff, *Gen Z is less likely to have a driver's license. Here's why.* USA TODAY (May 17, 2024),
https://www.usatoday.com/story/graphics/2024/05/17/gen-z-less-likely-get-drivers-license/73678202007/ ..................................................... 5

U.S. Census Bureau, Population Division, *Annual Estimates of the Resident Population by Single Year of Age and Sex for New Hampshire: April 1, 2020 to July 1, 2025* (SC-EST2025-SYASEX-33) (Released June 2026) .......................................................................... 6

U.S. Department of State, *Photo ID Requirements,*
https://travel.state.gov/content/travel/en/passports/how-apply/identification.html .............................................................................. 13

**INTRODUCTION**

As the Supreme Court has held, "Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society. Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." *Reynolds v. Sims*, 377 U.S. 533, 561-62 (1964).

In 2026, New Hampshire tried yet again to disenfranchise young voters in the state by passing HB 323, which amended the state's voter ID law to exclude the use of validly issued student IDs to prove a voter's identity in order to obtain a ballot, even where those student IDs meet the criteria that other acceptable forms of ID must meet (having a photograph and an expiration date). New Hampshire students have been authorized to use their IDs since the state first introduced a voter ID law in 2012, and they have done so without incident since then. HB 323 unconstitutionally burdens the ability of young people to vote, has been improperly extended by defendants to preclude use of student IDs for registration although the legislation itself provides no authorization for any such extension, and unlawfully discriminates against young people in the exercise of their voting rights, all while failing to advance any legitimate state interest, to the harm of the Plaintiffs and in violation of the First, Fourteenth, and Twenty-Sixth Amendments to the U.S. Constitution. A preliminary injunction against HB 323 is necessary now so that all citizens of New Hampshire can participate in the governance of the state and this

nation, that all can have confidence that every voice will be heard and every vote counted, and that democracy may best be preserved.

**LEGAL STANDARD**

To obtain a preliminary injunction, the movant must demonstrate that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities is in their favor; and (4) an injunction is in the public interest. *US Ghost Adventures, LLC v. Miss Lizzie's Coffee LLC*, 121 F.4th 339, 347 (1st Cir. 2024). Plaintiffs satisfy that standard here.

## I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

### A.    Count I: HB 323 Unconstitutionally Burdens Young People's First and Fourteenth Amendment Rights to Vote.

The "careful and meticulous" scrutinization of alleged infringements of the right of citizens to vote mandated by the Supreme Court is governed by the *Anderson-Burdick* standard, which requires the court to "weigh 'the character and magnitude of the asserted injury to the'" voters' right "against 'the precise interests put forward by the State as justifications for the burden imposed . . . .'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)); *N.H. Youth Movement v. Scanlan*, No. 24-CV-291, 2026 WL 1500857, at *28 (D.N.H. May 28, 2026) ("*NHYM*"). The level of scrutiny applied is on a sliding scale; the greater the burden on the First and Fourteenth Amendment rights to vote, the stricter the scrutiny. *Burdick*, 504 U.S. at 434. The essential point is this: the Constitution bars states from burdening the fundamental right of their citizens

2

to vote "that are not reasonably justified by states' important regulatory interests." *Common Cause R.I. v. Gorbea*, 970 F.3d 11, 14 (1st Cir. 2020) (per curiam) (citations omitted). It is well-settled that even "slight" burdens "must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J. op.) (quoting *Norman v. Reed*, 502 U.S. 279, 288-89 (1992)); *NHYM*, 2026 WL 1500857, at *29; *Count US IN v. Morales*, No. 1:25-cv-00864, 2026 WL 1009067, at *7 (S.D. Ind. Apr. 14, 2026). Furthermore, the analysis must consider the entire voting system, not just the challenged law. New Hampshire "had one of the strictest voting regimes in the country[,]" *before* HB 323 was passed. *NHYM*, 2026 WL 1500857, at *3. It is in that context that additional burdens must be analyzed.

As set forth below, HB 323 significantly infringes on the right of young people to vote while advancing no, much less any "weighty," legitimate state interest. While the burdens being imposed by HB 323 plainly warrant strict scrutiny, they are unconstitutional even under a lesser standard of scrutiny and are in no way justified by any countervailing state interest. Accordingly, Plaintiffs will likely succeed on the merits of Count I of their Complaint.

###### i.    HB 323 Fundamentally and Improperly Changed the Voting System in New Hampshire for Young Voters.

New Hampshire has required voters to present valid photo identification as proof of identity at the polls since 2012. A valid photo identification shows the individual's name, a photograph of the individual, and an expiration date that has not been exceeded by more than 5 years. N.H. Rev. Stat. Ann. ("RSA")

3

§ 659:13(II)(a). Prior to the passage of HB 323, the law listed forms of acceptable photo identification, including a driver's license issued by any state or the federal government; an identification card issued under New Hampshire law or a nondriver's identification issued by another state's motor vehicles department; a US armed services identification card; a US passport; and a valid student ID issued by a New Hampshire college, university or career school, a New Hampshire public high school, an accredited nonpublic high school in New Hampshire, Dartmouth College, or a college or university operated by the university system of New Hampshire or the community college system of New Hampshire. Voters also may establish their identity when registering to vote by presenting "[a]ny other evidence that reasonably establishes that it is more likely than not that the person is who they claim to be." RSA 654:12(d)(4).

For years, thousands of students in New Hampshire used their readily accessible student IDs when registering to vote and to obtain a ballot and vote on election day. There is no evidence they were used to commit voter fraud or were unreliable. Nevertheless, New Hampshire Governor Kelly Ayotte signed HB 323 into law on April 3, 2026, to go into effect on June 2, 2026. HB 323 amended RSA 659:13 to eliminate student IDs from the list of acceptable methods by which a person can prove their identity. It did not amend RSA 654:12, which governs identification requirements for voter registration. But Secretary Scanlan, the state's "chief election officer," RSA 652:23, unilaterally announced on April 23, 2026 that, "[e]ffective June 2, 2026, student IDs cannot be used as proof of ID when registering

4

to vote, [or] requesting an absentee ballot . . . ."[1] For years, thousands of New Hampshire students used an easily available and used for years reliable form of identification—their student IDs—to demonstrate identity to register to vote and to cast their ballots. On June 2, 2026, that option was abruptly taken from them.

The three remaining forms of valid identification used by almost all New Hampshire voters are driver's licenses, passports, and state-issued IDs. RSA 654:12(d); RSA 659:13(II)(a). Many young voters have neither driver's licenses nor passports, nor any current need for them, and are unlikely to obtain them to vote.

### ii.    Many young voters do not have a driver's license.

A significant number of young voters do not possess a driver's license. Between 2012 and 2022 there was a 28% decrease in teenagers applying for and earning their driver's license in New Hampshire.[2] According to the U.S. Department of Transportation, as of 2024 there were 24,496 New Hampshire residents with driver's licenses between ages 18 and 19, and 71,424 with driver's licenses between ages 20 and 24. By comparison, the U.S. Census Bureau reports that in 2024 there were 32,951 New Hampshire residents between the ages 18 and 19, and 87,828 between 20 and 24. Accordingly, approximately **26%** of New

---

[1]    Press Release, Secretary of State of New Hampshire, Secretary of State Shares Election Resources for New Hampshire Students (April 23, 2026), https://mm.nh.gov/files/uploads/sos/docs/4-23-26-student-flyer-press-release.pdf.

[2]    Sara Chernikoff, *Gen Z is less likely to have a driver's license. Here's why.* USA TODAY (May 17, 2024), https://www.usatoday.com/story/graphics/2024/05/17/gen-z-less-likely-get-drivers-license/73678202007/.

Hampshire residents 18 to 19 years of age did not have a driver's license, and almost **19%** of New Hampshire residents between the ages of 20 and 24 did not have a driver's license.[3] This accords with nationwide trends, showing that as of 2024, approximately 19% of 20-24 year olds did not have a driver's license.[4] Thus, approximately **20-25%** of New Hampshire residents who could benefit from being able to continue to use a student ID would now be significantly burdened in the exercise of their franchise as a result of HB 323. By comparison, the number of New Hampshire residents without driver's licenses over the age of 25—who most typically are not students—is substantially lower, as the percentage of New Hampshire residents between the ages of 25 and 64 without driver's licenses ranges from only 4.4% to 6.5%.[5] Obtaining a driver's license is significantly more burdensome than simply presenting a school-issued ID, which students already have in order to attend their school. It requires multiple trips to a Department of Motor Vehicles ("DMV") office, often paying for and attending driver's education, satisfying the practice driving hours, studying for and passing a written exam, and

---

[3]   U.S. Census Bureau, Population Division, *Annual Estimates of the Resident Population by Single Year of Age and Sex for New Hampshire: April 1, 2020 to July 1, 2025* (SC-EST2025-SYASEX-33) (Released June 2026); Federal Highway Administration, Office of Highway Policy Information, *Licensed Drivers by State, Sex, and Age Group 1994-2024,* DL-22 (Updated June 24, 2026).

[4]   *Gen Z & Teen Driving Statistics: 2026 Licensing Trends & Young Driver Survey*, MERCURY INSURANCE CO., (July 8, 2026), https://www.mercuryinsurance.com/resources/auto/gen-z-driving-statistics.html.

[5]   *See* the data set forth in the sources cited, *supra,* in fn. 3.

passing a driving test.[6/] Young voters without driver's licenses are unlikely to be able to obtain one in time to vote, and doing so would be a significant burden.

### iii. Many young voters do not possess or cannot access passports.

While New Hampshire does permit passports to be used to establish identity, this Court has recently found that "approximately 38% of U.S.-born eligible New Hampshire voters do not possess a passport . . . ." *NHYM*, 2026 WL 1500857, at *6. They are difficult and cost from $65 to $165 to obtain (compared to free student IDs). *Id.* at *17. Moreover, "only approximately 11% of eligible voters in New Hampshire who possess a passport . . . carry those documents with them regularly." *Id.* at *7. In other words, because many New Hampshire voters register and vote on the same day, those who have passports may not be able to access them in time to register or to vote. For these reasons, young voters are unlikely to obtain passports in order to vote and doing so would be a substantial burden.

### iv. Many young voters do not have veteran's identification.

Finally, New Hampshire's rule permitting documents showing armed service status to demonstrate identity does little to alleviate the burden that HB 323 places on young voters. The Department of New Hampshire Employment Security reports that among all New Hampshire residents age 18-34, only approximately 6% are

---

[6/]    1st Gear Driving, *Teen Drivers Ed Classes*, https://www.1stgeardriving.com/teen-drivers-ed-classes.phtml; New Hampshire Division of Motor Vehicles, *Driver Education*, https://www.dmv.nh.gov/drivers-licensenon-driver-ids/apply-your-first-drivers-licensenon-driver-id/driver-education.

veterans,[7] and the number must be lower still when the 26-34 year old age group is excluded. Thus, functionally, HB 323 requires thousands of young voters—and almost exclusively young voters—to obtain state-issued IDs in order to vote. *Count US IN v. Morales*, No. 1:25-cv-00864-RLY-MKK, 2025 WL 4710017, at *4 (S.D. Ind. Oct. 14, 2025) ("a facially neutral and nondiscriminatory electoral regulation may nonetheless warrant a higher degree of scrutiny when an identifiable 'class of voters' bears its effects") (citation omitted).

### v.    Obtaining State-Issued IDs is a Significant Burden.

While New Hampshire law permits young voters to obtain and use a state-issued ID to register to vote and obtain a ballot, obtaining it is drastically more burdensome than simply presenting the student ID that they already have. Securing a state-issued ID will necessitate one or more trips to one of the state's few and often inaccessible DMV offices, paying a fee or navigating a cumbersome voucher process (involving additional trips to the town clerk's office to avoid that fee), and completing this multiple-step and multiple-day process in time to register and to vote with that state-issued ID, when same-day registration and voting is by far the norm in New Hampshire. RSA 654:12.

There are only 14 DMV locations in the entire state that issue identification cards, all of which are available by appointment only. Two (Coleridge and North Haverhill) have limited hours; others  are closed no later than 4:15 pm or 4:30 pm;

---

[7]    Economic and Labor Market Information Bureau, New Hampshire Employment Security, *Veterans in New Hampshire 2025* (Nov. 2025), https://mm.nh.gov/files/uploads/nhes/documents/veterans-2025.pdf.

none are open on weekends.[8] Adding to the burden, high school students living with their parents or guardians will need either to bring those persons with them to the DMV or obtain a notarized statement proving their residence in New Hampshire.[9] This can be difficult, as it requires those parents to be both mobile and able to take time off work or other daytime obligations. For the students themselves, because most high schools typically end their day between 2:30 pm and 3:00 pm, getting to the DMV office will be problematic. Several large high schools in the state have no DMV office within a half-hour car ride or within an hour by public transit. These include Plymouth Regional High School, Convale High School, Pinkerton High School, and Littleton High School. The closest DMV location to Dartmouth College is thirty miles away in Newport and is not reliably accessible by public transportation.[10] The absence of readily available public transportation to the few DMV offices will burden all students, and in particular those with disabilities. As this Court has already found in a separate lawsuit, laws that require certain voters

---

[8]     New Hampshire Division of Motor Vehicles, *Hours and Locations,* https://www.dmv.nh.gov/hours-and-locations.

[9]     New Hampshire Division of Motor Vehicles, *Identity and Residency Requirements*, (June 2023), https://www.dmv.nh.gov/sites/g/files/ehbemt416/files/inline-documents/dsmv634b.pdf. These requirements largely overlap with the requirements to prove domicile under the voter registration statute. RSA 654:12(I)(c). But before HB 323, young voters could present these at a town clerk's office, or at a high school registration drive organized by the plaintiff. Young voters are not going through a more rigorous process to vote, only a more onerous one.

[10]    Hearing on H.B. 323 Before the S. Election Law & Mun. Affairs Comm., 2026 Reg. Sess. (N.H. Feb. 10, 2026), https://gc.nh.gov/bill_Status/pdf.aspx?id=15266&q=HearingRpt.

to take additional time to register or to vote "will deter certain voters from registering and voting entirely." *NHYM*, 2026 WL 1500857, at *16.

Further, while students do not pay extra for their school IDs, state-issued IDs cost $20. Voters theoretically can obtain a voucher that waives the fee, but they are required to navigate a time-intensive, multiple-office-visit process. A student must first go to the town or city clerk and present proof of domicile and swear to the lack of other forms of identification to obtain the voucher. RSA 260:21(V)(a). The student must then travel to the DMV to present the voucher (along with proof of domicile) to obtain the state-issued ID. The student must then travel back to the clerk to register to vote. Making matters worse, some clerks are unaware the voucher system exists and have turned away young voters requesting vouchers. And college students who leave their out of state driver's licenses or passports at home will be compelled to pay the fee, as they would not be eligible for a voucher.

Moreover, New Hampshire treats voters of different ages differently regarding obtaining non-driver IDs in order to vote. For example, people over sixty-five who turn in their driver's license get a free state ID in a single trip to the DMV without having to go through the burdensome voucher process. RSA 260:21(V)(a).

As this Court has previously found, New Hampshire relies heavily on election day registration, especially as it allows the state to avoid the requirements of the National Voter Registration Act. *NHYM*, 2026 WL 1500857, at *31. However, as a result of HB 323, the state effectively denies this opportunity to the thousands of young student voters who have reliable, non-expired photo ID (their student IDs),

10

are now prohibited from using that ID, and who will not be able to obtain another form of authorized ID on election day.

Such burdens have long-lasting impacts on voting. Research demonstrates that voting is habit forming, that voters are more likely to continue to vote than those who have not voted in the past,[11] and that potential voters are less likely to vote in the future if they have been prevented from doing so.[12] This Court, in a different case, adopted expert findings which concluded that unnecessary burdens on voting lower confidence in elections, because "voters who have a frustrating experience at the polls, people who try to vote and can't, that they are less – they are more likely to report low confidence in election outcomes." *NHYM*, 2026 WL 1500857, at *18 (citation and internal quotation marks omitted).

In sum, the burden on New Hampshire students' freedom to exercise the most fundamental of rights, the right to vote, resulting from HB 323's exclusion of the use of student IDs to establish identity, is substantial.

---

[11]    Alexander Coppock & Donald P. Green, *Is Voting Habit Forming? New Evidence from Experiments and Regression Discontinuities*, 60 American J. of Pol. Sci. 1044, 1046 (2016) (Data "leaves little doubt that voting is habit forming"), https://alexandercoppock.com/coppock green 2016.pdf.

[12]    Michael G. Miller et al, *Restrictive Mail Voting Rules Burden Minority Voters: Evidence from Texas*, 27-28 (Working Paper, Brennan Center, 2024), https://brennancenter.org/sites/default/files/2024-03/Miller%20-%20Texas Rejections.pdf.

11

### vi.    Banning the Use of Student IDs Furthers No Legitimate Interest.

Measured against these burdens, the state can advance no "weighty" legitimate interests in curtailing the use of student IDs. This Court has already found that "[w]rongful voting, meaning unqualified voters <u>intentionally or unintentionally</u> casting ballots, is extremely rare in New Hampshire"; only **47** cases could be identified between 1998 and 2024, out of **8.3 million** votes cast. *NHYM*, 2026 WL 1500857, at *17 (emphasis in original). "Voter fraud, meaning unqualified voters <u>intentionally</u> casting ballots while knowing that they are not entitled to vote, is even rarer in New Hampshire." *Id.* The defendants in that case—who are the same defendants here—agreed "that instances of voter fraud are 'miniscule' and virtually non-existent in the state." *Id.*[13] At no time has the state ever identified *any* evidence whatsoever that *any* student IDs were incorrectly—much less fraudulently—provided to any student or that a student ID was *ever* improperly, or even incorrectly, used to demonstrate a voter's identity at any polling place during any election or in connection with any voter's registration.[14] Further, New Hampshire residents' confidence in the integrity of the state's elections prior to HB 323 was very high, as a Special Committee on Voter Confidence formed in 2022 by the defendant Secretary confirmed. *NHYM*, 2026 WL 1500857, at *17. The

---

[13]    Governor Chris Sununu previously expressed the same view. *Id.* at *18.

[14]    As to any claims of concern about "non-resident fraud," not only is there no evidence of any such problem existing, HB 323 does nothing to address the imaginary concern, as student IDs solely establish identity, and contain no information regarding domicile.

12

Committee did not make any recommendation to eliminate student IDs or suggest that doing so would increase voter confidence. *Id.* at \*18. In a similar case in the Southern District of Indiana, the district court found that "general fraud concerns" cannot justify "the elimination of a form of photo ID [(student IDs)] that has been accepted for 20 years and otherwise complies with the voter ID law's neutral requirements." *Count US IN*, 2025 WL 4710017, at \*6. The same is the case for the near-identical ban here.

Even if there were evidence of fraudulent use of student IDs (which there is not), the exclusion of student IDs from the list of acceptable forms of voter identification in fact provides *no* heightened level of reliability, as students obtain the still-accepted forms of photo identification—including driver's licenses and passports—*by providing their student ID to prove identity*.

For example, a student applying for a passport can demonstrate his or her identity in order to obtain the passport by presenting a student ID and a school yearbook.[15] Similarly, a student can present a student ID and a birth certificate at the DMV in order to establish identity and age when applying for a driver's license or a non-driver's state issued ID—the very documents which New Hampshire permits to be used to establish identity and age for purposes of voter registration

---

[15]    U.S. Department of State, *Photo ID Requirements*, https://travel.state.gov/content/travel/en/passports/how-apply/identification.html,.

13

and voting.[16] The absurdity is highlighted further by the voucher system, which requires an initial trip to the clerk with proof of domicile. In other words, they use the now-excluded form of ID (their student ID) in conjunction with other paperwork (still required by the state to register to vote) in order to obtain a different form of identification that will be accepted for the purpose of proving identity when registering and voting. HB 323 requires young student voters to make three or more trips to multiple government offices, places significant burdens on young student voters, and does nothing to address the non-existent issue of voter fraud. The law furthers no legitimate, let alone weighty, interest. *Count US IN*, 2025 WL 4710017, at *7 (plaintiffs succeed even where burden is "moderate" if the challenged legislation "does not actually advance [the government's] interests.") (citations omitted).

Further, New Hampshire still permits passports to be used to establish identity for voting even though passports only need to be renewed every ten years and are valid under the amendment for five years after expiration, meaning that a 32 year-old voter can use an expired passport they obtained when they were 18 to prove identity to vote, but a young voter who is a current student cannot use their current student ID to obtain a ballot. Similarly, voters over the age of sixty-five can use their expired driver's licenses without limit.

---

[16]     New Hampshire Division of Motor Vehicles, *Identity and Residency Requirements*, https:///www.dmv.nh.gov/sites/g/files/ehbemt416/files/inline-documents/dsmv634b.pdf.

14

Courts must look to the "legitimacy and strength" of the state's proffered interests as well as "the extent to which those interests make it necessary to burden the plaintiff's rights." *Anderson,* 460 U.S. at 789; *cf. Gorbea*, 970 F.3d at 15 (if the effect of a law on a legitimate interest is "marginal at best[,]" the interest is not given significant weight). Because HB 323 substantially burdens the right of students to vote and the state has not and cannot show legitimate and strong interests for curtailing the use of student IDs to establish identity for obtaining a ballot—much less that those interests make imposing those burdens "necessary"— Plaintiffs are likely to succeed on the merits of their claim in Count I of their Complaint that the statute violates the First and Fourteenth Amendments.

### B.    Count II: HB 323 Violates The Twenty-Sixth Amendment.

Plaintiffs are likely to succeed on Count II for violation of the Twenty-Sixth Amendment, which guarantees that "[t]he right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by . . . any State on account of Age." U.S. Const. amend. XXVI, § 1.

The First Circuit has held that under the Twenty-Sixth Amendment (like the Fifteenth Amendment on which it is modeled), "if a condition, not insignificant, disproportionately affects the voting rights of citizens specially protected by [the amendment], the burden must shift to the governmental unit to show how the statutory scheme effectuates, in the least drastic way, some compelling governmental objective." *Walgren v. Howes*, 482 F.2d 95, 102 (1st Cir. 1973). This standard reflects Congress's own expectation and understanding of the amendment at the time it was ratified. *See id.* ("while the Twenty-Sixth Amendment speaks only

15

to age discrimination, it has . . . particular relevance for the college youth who comprise approximately 50 per cent of all who were enfranchised by this amendment."). As discussed above, the burden of HB 323 disproportionately falls on young voters—particularly those between the ages of 18 and 21. This burden is substantial—certainly "not insignificant," and does not effectuate any compelling governmental objective. Thus, plaintiffs have established that they will likely succeed on the Twenty-Sixth Amendment claim.

Other courts have adopted a more exacting standard, holding that an "abridgement" of the right to vote under the Twenty-Sixth Amendment occurs when there is a "material requirement" on the right to vote or when voters are worse off as a result. *Tully v. Okeson*, 78 F.4th 377, 386-87 (7th Cir. 2023); *Count US IN*, 2025 WL 4710017, at *8. That is not in accord with the original meaning of the Twenty-Sixth Amendment or the binding law of this circuit. *Walgren*, 482 F.2d at 102.

In any case, however, even under the less strict standard applied in other circuits, HB 323 plainly violates the Twenty-Sixth Amendment. By eliminating student IDs as an accepted form of identification after many years without incident, young people between the ages of 18 and 24—who are the overwhelming majority of affected New Hampshire voters—are worse off than they had been in terms of being able to establish their identity so as to register to vote and to obtain a ballot to cast their vote. And there can be no question that HB 323 imposes a material requirement on young voters. Instead of being able to use their readily available

16

student IDs, they must bear the expense and burdens of obtaining different ID—which, as noted, they can obtain using precisely the same documentation that they once could use to register to vote—namely, their student ID. But they can obtain this new ID only by paying a fee and making unnecessary and multiple trips to various government agencies that have few offices, limited hours, and (in the case of the DMV) operate by appointment only. Further, as noted, because HB 323 requires a trip to the DMV to obtain the ID and then another trip to the town or city clerk to register and vote, young voters are effectively precluded from engaging in same day registration and voting, the predominant process in New Hampshire. As a result, HB 323 plainly abridges the voting rights of thousands of young voters in violation of the Twenty-Sixth Amendment.

Other courts have applied the *Arlington Heights* standard to determine if a facially neutral law that abridges the right to vote was motivated by discriminatory animus. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977); *Allen v. Waller Cnty.*, 472 F. Supp. 3d 351, 363-64 (S.D. Tex. 2020) (collecting cases). Again, because this Court must follow the standard set in *Walgren,* no such requirement applies here. But even if it did, plaintiffs meet that standard. In considering whether the abridgment is the result of discriminatory animus, a court will consider disparate impact, historical background, and legislative history. *Arlington Heights*, 429 U.S. at 266-68. Those elements plainly exist here. First, as demonstrated above, HB 323 imposes a "stark" and disparate burden on voting on

17

young people 18 and older. *Anderson ex rel. Dowd v. Boston*, 375 F.3d 71, 89 (1st Cir. 2004).

Second, the legislative history reveals that the purported justifications for HB 323—combatting voter fraud and encouraging confidence in elections—were pretextual. *Cf. Id.* at 85-88 (considering the goals of the legislators in applying *Arlington Heights*). As discussed above, New Hampshire voters are already confident in their elections and New Hampshire legislatures had access to the Secretary of State's Commission making findings to that effect. The legislature produced or considered *no* evidence of student ID-driven voter fraud, nor any evidence that student IDs were less reliable than other forms of identification (and indeed, those same student IDs can be used to obtain the still-accepted form of IDs, in coordination with other documentation that still must be produced during the voter registration process). To the contrary, legislators heard testimony that student IDs were in fact reliable. Complaint ("Compl."), ¶¶ 134-35.[17]

Furthermore, during debates, legislators repeatedly misstated New Hampshire law to justify HB 323. Several legislators referenced concerns about proving domicile and citizenship, even though student IDs could not and had never been used to prove domicile or citizenship. Compl., ¶¶ 150-1. Some legislators claimed that student IDs lacked expiration dates. Compl., ¶¶ 144. Those cards—if they exist—would not have been valid forms of identification even prior to HB 323.

---

[17] In citing to the complaint, plaintiff is relying upon the evidentiary and legal basis cited in the complaint.

Some legislators referenced the registration process, even though HB 323 did not amend the registration process. Compl., ¶¶ 150-51.

And while legislators presented and received no evidence of student-ID-driven voter fraud, they did receive testimony about the burden HB 323 would—and has—created for young voters. Compl., ¶¶ 114-143. *Count US IN*, 2025 WL 4710017, at *9-10 (conducting a similar analysis).

Third, and finally, HB 323 is not the first time that a legislature has raised pretextual concerns about domicile or fraud to try to justify laws that suppress younger voters. Compl., ¶¶ 162-64. *Cf. Anderson ex rel. Dowd*, 375 F.3d at 83-85 (considering the history of segregation in applying *Arlington Heights* in the school context). It has been attempted in New Hampshire and across the country; these laws have consistently been struck down. For example, in 2013, New Hampshire enacted SB 318 requiring residents to acknowledge on voter registration forms that they were bound by state residency requirements to register vehicles and apply for state driver's licenses, which placed a burden on college students coming to New Hampshire from other states. The New Hampshire Supreme Court permanently enjoined SB 318 in *Guare v. New Hampshire*, 167 N.H. 658, 669 (2015). In 2017, the state enacted SB 3, requiring persons registering to vote to present documentary evidence of their intent to be domiciled in New Hampshire. The Superior Court enjoined that law as well, finding that it "impacts certain voters more than others," including college students, rendering it in violation of the New Hampshire Equal Protection Clause. *League of Women Voters of N.H. v. Gardner*, No. 226-2017-CV-

19

00433, 2020 N.H. Super. LEXIS 39, at *74 (N.H. Super. Apr. 8, 2020). The New Hampshire Supreme Court affirmed the injunction, concluding that SB3 "imposes unreasonable burdens on the right to vote" without being substantially related to an important governmental objective." *N.H. Democratic Party v. Sec'y of State*, 174 N.H. 312, 321, 332 (2021).

In another example, in 2024 the state passed HB 1569, eliminating the use of a qualified voter affidavit to prove citizenship when voting. When the statute was challenged, this Court found that the affidavit was disproportionately used by younger voters. *NHYM*, 2026 WL 1500857, at *32. New Hampshire then passed HB 464, establishing prior voter registration as proof of citizenship. Older voters were thus spared from having to produce documentation of citizenship, while first-time voters, who are overwhelmingly young, were compelled to produce documentation. *Id.* HB 1569 was permanently enjoined this year, where this Court found that "HB 1569's elimination of the [affidavit] . . . is an unjustifiable burden on the right to vote in violation of the First and Fourteenth Amendments." *Id.* at *37. Against this problematic history, it is likely that the New Hampshire legislature acted with discriminatory animus in passing HB 323.

Accordingly, under any test, Plaintiffs are likely to succeed on Count II.

### C.    Count III: HB 323 Violates the Equal Protection Clause of the Fourteenth Amendment.

The Fourteenth Amendment guarantees equal protection of the laws, including "a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn v. Blumstein*, 405 U.S. 330, 336

20

(1972) (citations omitted). HB 323 discriminates against young voters by invalidating a form of identification disproportionately used by 18-24 year olds without any evidence whatsoever that student IDs are unreliable markers of identity and knowing that older voters would not be similarly burdened. By making driver's licenses, passports, and state-issued identification cards the primary form of identification and eliminating the use of student IDs, HB 323 effectively favors older voters who either are far more likely to possess such means of identification or are eligible for the exemptions New Hampshire makes available to older voters while disadvantaging young voters by eliminating student IDs. Accordingly, Plaintiffs are likely to succeed on the merits on Count III.

    **D.**    **Count IV: Secretary Scanlan's April 23 Directive Violates the Separation Of Powers Pursuant to N.H. Const. Pt. 1, art. 37.**

As noted, HB 323 only amends RSA 659:13 governing obtaining of ballots. It does not apply to RSA 654:12 governing the registration process for voting. Nevertheless, by his April 23 directive Secretary Scanlan has directed local clerks that student IDs are not acceptable identification for purposes of voter registration. Secretary Scanlan does not have the authority to pass or amend election-related statutes, which power resides solely with the legislature. *N.H. Health Care Ass'n v. Governor*, 161 N.H. 378, 386 (2011). Accordingly, Plaintiffs are likely to succeed on the merits on Count IV.

**II.**    <u>**PLAINTIFFS WILL BE IRREPARABLY HARMED IN THE ABSENCE OF PRELIMINARY RELIEF**</u>

As the Court observed in *Count US IN*, "'[V]oting is of the most fundamental significance under our constitutional structure.' As such, courts routinely find that

restrictions on the right to vote constitute irreparable harm. . . . 'As has been held by numerous other courts, a violation of the right to vote is presumptively an irreparable harm. Because an individual cannot vote after an election has passed, it is clear that the wrongful disenfranchisement of a registered voter would cause irreparable harm without an adequate remedy at law.'" 2026 WL 1009067, at *14 (internal citations omitted). Simply put, "[a] restriction on the fundamental right to vote . . . constitutes irreparable injury." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012); *see also Sindicato Puertorriqueno de Trabajadores v. Fortuno*, 699 F.3d 1, 15 (1st Cir. 2012) ("Because we conclude that plaintiffs have made a strong showing of likelihood of success on the merits of their First Amendment claim, it follows that the irreparable injury component of the preliminary injunction analysis is satisfied as well.") (citations omitted).

### III.  <u>BALANCE OF HARMS AND THE PUBLIC INTEREST REQUIRE GRANTING INJUNCTIVE RELIEF AGAINST HB 323</u>

The "balancing of the equities and analysis of the public interest . . . 'merge when the [g]overnment is the opposing party.'" *Does 1-6 v. Mills*, 16 F.4th 20, 37 (1st Cir. 2021) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Where, as here, the plaintiff is likely to prevail on a constitutional claim, "the balance of harms normally favors granting preliminary injunctive relief because the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional." *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 589-90 (7th Cir. 2012) (citation omitted); *cf. We the People PAC v. Bellows*, 40 F.4th 1, 25 (1st Cir. 2022) (affirming preliminary injunction of unconstitutional restriction on petition

22

gatherers). Further, as the Supreme Court noted in *Dunn v. Blumstein*, 405 U.S. at 336, the public interest weighs in favor of granting an injunction because the public has a strong interest in exercising the "fundamental political right" to vote.

As discussed above, young voters have used student IDs in the voting registration and ballot process since New Hampshire first introduced voter ID laws. HB 323 upended that system and leaves thousands of young voters without the means to vote. An injunction would protect New Hampshire voters and enable the status quo to continue through the upcoming elections. *Cf. Bellows* 40 F.4th at 25 (allowing preliminary injunction on the eve of an election).

## IV.    <u>NO NEED FOR A BOND</u>

"A district court has 'substantial discretion to dictate the terms of an injunction bond.'" *HCC Specialty Underwriters, Inc. v. Woodbury*, 289 F. Supp. 3d 303, 330 (D.N.H. 2018) (quoting *Int'l Ass'n of Machinists & Aerospace Workers v. E. Airlines, Inc.*, 925 F.2d 6, 9 (1st Cir. 1991)). In noncommercial cases, such as this one, the Court considers the financial hardship a bond requirement would impose on the applicant, the risk of loss or damages an injunction would impose on defendant, or whether the suit is to enforce important federal rights or public interests. *See Crowley v. Loc. No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen, & Packers*, 679 F.2d 978, 1000 (1st Cir. 1982), *rev'd on other grounds*, 467 U.S. 526 (1984). All of these factors weigh against issuing a bond. Plaintiffs are a non-profit organization and indigent students who would experience significant financial hardship and there is no risk of loss or damages on Defendants without a bond. Moreover, this case seeks to enforce the

23

constitutional right to vote and enjoin the government from imposing significant burdens on a targeted group of voters in New Hampshire.

## V.  PLAINTIFF OPEN DEMOCRACY HAS SUFFERED INJURY FROM HB 323 AND HAS STANDING

Organizational standing is proper when a challenged law "directly affect[s] and interfere[s] with [plaintiff's] core business activities." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024). Applying that standard, this Court recently held, in a separate case, that Plaintiff Open Democracy suffers injury when New Hampshire burdens voters, especially young voters, in the exercise of their right to vote, and because such injury would be redressed by the judicial relief sought here, it has standing to challenge the constitutionality of those restrictive actions of the state. Zink Aff., ¶ 3; *NHYM*, 2026 WL 1500857, at *24-25. As this Court found, the core activities of Open Democracy, as a voting rights organization, include conducting voter registration activities, a high school voter registration program and voter education. Zink Aff., ¶ 3; *NHYM*, 2026 WL 1500857, at *24-25. In addition to all its other core activities, it seeks to have all eighteen-year-olds in the state register, hosting high school registration drives and employing a high school voter registration coordinator. Zink Aff., ¶ 6. It created a tool kit including sample letters to parents, sample letters to town clerks and social media posts. *NHYM*, 2026 WL 1500857, at *20; Zink Aff., ¶ 11.

When New Hampshire eliminated the qualified voting affidavit that had been previously used to establish citizenship, Open Democracy had to spend resources to modify its tool kit, update its education materials, rework its sample letters and

24

social media posts and expand its poll observer programs, diverting resources from all of its other core activities such as campaign finance research. Zink Aff., ¶ 11. Because of the change, Open Democracy could register fewer teenage voters. Zink Aff., ¶ 20. This Court held that this constituted injury to Open Democracy that gave it standing. *NHYM*, 2026 WL 1500857, at *25. HB 323's elimination of student IDs as a free means of establishing identity for registration and voting purposes and narrowing available options to expensive, time consuming and inconvenient alternatives such as driving licenses and passports again has the same effect on Open Democracy, similarly giving it standing to challenge New Hampshire's latest effort to limit voting by young people. Zink Aff., ¶ 12; s*ee also League of United Latin Am. Citizens v. Exec. Off. of President*, 808 F. Supp. 3d 29, 57-58 (D.D.C. 2025) (holding voting rights organization has organizational standing to challenge executive order forcing plaintiffs "to update educational information" and "invest additional resources in training their staff and volunteers"); *E.Q. v. U.S. Dep't of Homeland Sec.*, No. 25-CV-791, 2026 WL 946181, at *12 (D.D.C. Apr. 8, 2026) (standing found where change in rules compel plaintiff to reconfigure their programming and representation).

## CONCLUSION

For all of the above-stated reasons, Plaintiffs respectfully request that this Court preliminarily enjoin Defendants from implementing HB 323.

Dated: August 11, 2026          Respectfully submitted,

*/s/ Henry Quillen*

25

Henry C. Quillen (Bar No. 265420)
WHATLEY KALLAS, LLP
159 Middle Street, Suite 2C
Portsmouth, NH 03801
Tel: (603) 294-1591
Fax: (800) 922-4851
hquillen@whatleykallas.com

Ben Horton (to apply *pro hac vice*)
John Bonifaz (to apply *pro hac vice*)
Ben Clements (to apply *pro hac vice*)
Courtney Hostetler (to apply *pro hac vice*)
FREE SPEECH FOR PEOPLE
28 S. Main Street, Suite 200
Sharon, MA 02067
Tel: (617) 244-0234
chostetler@freespeechforpeople.org
bhorton@ freespeechforpeople.org
bclements@freespeechforpeople.org
jbonifaz@freespeechforpeople.org

Michael Gardener (to apply *pro hac vice*)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Tel: (617) 348-1642
msgardener@mintz.com

Yeilee Woo (to apply *pro hac vice*)
Sherwet H. Witherington (to apply *pro hac vice*)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
919 Third Avenue
New York, New York 10022
Tel: (212) 692-8153
Tel: (212) 692-8188
ywoo@mintz.com
shwitherington@mintz.com

*Attorneys for Plaintiff*
*Coalition for Open Democracy*

26