**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| **Coalition for Open Democracy,**<br><br>Plaintiff,<br><br>vs.<br><br>**David M. Scanlan, in his official capacity as New Hampshire Secretary of State and John Formella, in his official capacity as New Hampshire Attorney General,**<br><br>Defendants. | **Case No. 1:26-cv-00647-JL-TSM** |

**SINGLE UPDATED STATEMENT OF AGREED & DISPUTED FACTS**

The parties have agreed that these statements of fact are offered only for the purpose of the pending Motion for Preliminary Injunction, and that the offering of these facts does not bind the parties beyond the instant Motion. The parties respectfully reserve their rights to later challenge these facts, subject to proof, after the Court decides Plaintiff's Motion for Preliminary Injunction.

Agreement to the following facts does not prejudice any party's right to challenge the character, nature, relevance, or evidentiary weight of these statements.

**Voting in New Hampshire Prior to HB 323**

1. Since the introduction of New Hampshire's voter ID law in 2012, up until the passage of HB 323, many students were able to register to vote and obtain a ballot using **qualifying** student identification card to establish identity. RSA 659:13.

2. Effective June 2, 2026, HB 323 amended RSA 659:13, II, a provision of New Hampshire's election code that is titled, "Obtaining a Ballot."

3. On April 23, 2026, the Secretary of State's Office sent an NHVotes@sos.nh.gov email titled, "Subject: Informational Flyers - Voting for Students in NH." It stated: "Following the passage of HB 323, effective 6/2, student IDs can no longer be used to register to vote or obtain a ballot on election day." **That e-mail included links to a "Student Guide to Registering to Vote in NH" and a "Student Guide to Voting in NH." These guides stated that voters need proof of identity to register to vote and vote, and that student ID could not be used as proof of identity. The Student Guide to Registering to Vote included information on how to obtain a NH Driver's License or Non-Driver ID Card, with a link tree to New Hampshire Division of Motor Vehicles' resources regarding which documents may be used to obtain a NH Driver's License or Non-Driver ID Card, how to schedule an appointment to obtain a license or ID, and the fee schedule for a license or ID.**

4. In New Hampshire, voting registration is run locally by cities and towns. RSA 654:8.

5. Depending on timing and circumstance, to register to vote, a prospective voter must go to their local city or town clerk and present proof of identity, age, domicile, and citizenship. RSA 654:12; RSA 654:7-a; RSA 654:7-B.

6. On election day, a registered voter must present proof of identity to obtain a ballot. RSA 659:13.

7. Voters may establish their identity under New Hampshire law with a "valid photo identification shall show the name of the individual to whom the identification was issued, and the name shall substantially conform to the name in the individual's voter registration record; it also shall show a photograph of the individual to whom the identification was issued. The photo identification shall also have an expiration date that has not been exceeded by a period of more than 5 years, except that a voter 65 years of age or older may use an otherwise qualified form of identification without regard to expiration date". RSA 659:13(II)(a). HB 323 did not amend these options for voter identity verification.

8. Each voter qualification—identity, age, domicile, and citizenship—has different, though sometimes overlapping, documentation requirements.

9. Prospective voters in New Hampshire can establish their identity under New Hampshire law with: "(1) Photo driver's license issued by any state or the federal government. (2) United States passport, armed services identification, or other photo identification issued by the United States government. (3) Photo identification issued by local or state government. (4) Any other evidence that reasonably establishes that it is more likely than not that the person is who they

claim to be, including verification of the person's identity by the moderator or another election official." RSA 654:12, I(d).

10. Prior to HB 323, student identification cards were acceptable forms of identification to register to vote and obtain a ballot, subject to specific requirements. All forms of identification, including student-identification cards prior to HB 323, must "show the name of the individual to whom the identification was issued, and the name shall substantially conform to the name in the individual's voter registration record; it also shall show a photograph of the individual to whom the identification was issued," must have an expiration or issue date, and be presented within five years of either date. RSA 659:13(II)(a).

11. Also prior to HB 323, prospective voters could only establish their identity with student identification cards if the IDs were issued by "(i) A college, university, or career school in New Hampshire and approved to operate or licensed to operate in New Hampshire. (ii) A public high school in New Hampshire. (iii) A nonpublic high school in New Hampshire accredited by a private school accrediting agency that is recognized by the department of education. (iv) Dartmouth College. (v) A college or university operated by the university system of New Hampshire or the community college system of New Hampshire." 2026 New Hampshire Laws Ch. 20 (H.B. 323) (quoted text stricken by H.B. 323).

12. Before HB 323, a student voter in New Hampshire seeking to register to vote without a driver's license or passport could go to their town or city clerk, present

proof of age, citizenship, and domicile, and present their student identification as proof of their identity. RSA 654:12(d)(4).

13. Similarly, on election day, a student voter without a driver's license or passport could obtain a ballot by presenting their student identification card.

**HB 323**

14. HB 323 amends RSA 659:13 by eliminating student identification cards as a valid form of proving identity to obtain a ballot.

15. On April 3, 2026, Governor Kelly Ayotte signed HB 323 into law. The law went into effect on June 2, 2026.

16. On April 23, 2026, the Secretary of State's Office issued a press release stating that "[e]ffective June 2, 2026, student IDs cannot be used as proof of ID when registering to vote, requesting an absentee ballot, or checking in to vote in an election." Press Release, Secretary of State of New Hampshire, Secretary of State Shares Election Resources for New Hampshire Students (April 23, 2026), https://mm.nh.gov/files/uploads/sos/docs/4-23-26-student-flyer-press-release.pdf). It also described "new election resources for students who plan to register to vote in New Hampshire or vote in an upcoming election." *Id.* **The April 23rd press release was titled: Secretary of State Shares Election Resources for New Hampshire Students. *Id.* It announced "new election resources for students who plan to register to vote in New Hampshire or vote in an upcoming election" and attached copies of a "Student Guide to Voting in NH" and a "Student Guide to Registering to Vote in NH." *Id.***

17. HB 323 did not amend RSA 654:12(d), which sets forth "presumptive evidence of the identity of an applicant sufficient to satisfy the identity requirement" when registering to vote pursuant to RSA 654:12.

18. After HB 323, student voters without driver's licenses or passports will have to present federal, state, or local-issued identification to be able to register to vote and to obtain a ballot.

19. RSA 659:13, II(a), as amended by HB 323, now lists as valid forms of identification for purposes of obtaining a ballot a "driver's license issued by any state or the federal government," a state-issued identification card (from any state), a "United States armed services identification card" and a "United States passport or passcard." **Effective September 8, 2026, HB 317 further amended RSA 659:13, II to provide: "A moderator, clerk, supervisor, or selectman may verify a voter's identity if such moderator, clerk, supervisor, or selectman personally knows the voter."**

20. For purposes of registering to vote, RSA 654:12, I(d) lists "(1) Photo driver's license issued by any state or the federal government. (2) United States passport, armed services identification, or other photo identification issued by the United States government. (3) Photo identification issued by local or state government. (4) Any other evidence that reasonably establishes that it is more likely than not that the person is who they claim to be~~, including verification of the person's identity by the moderator or another election official~~." (struckthrough language removed by HB 317, effective 9/8/2026).

## The Impact of HB 323

21. Obtaining a first-time New Hampshire driver's license can require hours of driving time, passing a written exam and often completing a driver's education course.

22. The cited source indicates that the number of young people nationally who do not get their driver's licenses is rising, and the average age at which people get their driver's license is trending upward.[1]

23. Passports cost $65 to $165 and include a processing period.[2]

24. For student voters without a state or federal driver's license, passport, armed services identification, or other photo identification issued by the United States government, or identification issued by local or state government, in order to be able to register to vote after HB 323, they will now need to obtain identification conforming to these requirements. RSA 260:21; RSA 654:12, I(d)(1)-(3). For registering to vote, through September 7, 2026, they can present "[a]ny other evidence that reasonably establishes that it is more likely than not that the person is who they claim to be, including verification of the person's identity by the moderator or another election official." RSA 654:12(d)(4). A person who is checking in to vote and already registered to vote can still have their identity verified by an election official after September 7, 2026. *See* HB 317; RSA 659:13, I(c) (eff. 9/8/2026).

---

[1] Sara Chernikoff, *Gen Z is less likely to have a driver's license. Here's why*. USA TODAY (May 17, 2024), https://www.usatoday.com/story/graphics/2024/05/17/gen-z-less-likely-get-drivers-license/73678202007/.

[2] United States Department of State, *Apply for Your Adult Passport*, https://travel.state.gov/content/travel/en/passports/need-passport/apply-in-person.html.

25. For student voters without a state or federal driver's license, passport, or military ID, or an identification card issued under RSA 260:21, RSA 260:21-a, or RSA 260:21-b or a nondriver's identification card issued by the motor vehicles division, department, agency, or office of any other state, in order to obtain a ballot after HB 323, they will now need to obtain identification conforming to these requirements. RSA 659:13, II(a).

26. State-issued identification cards issued under RSA 260:21 may be used to prove identity both when registering to vote, RSA 654:12(I)(d)(3), and obtaining a ballot, RSA 659:13(II)(a)(2).

27. State-issued identification cards are issued by the New Hampshire Department of Motor Vehicles ("DMV"). RSA 260:21.

28. HB 323 prohibits student voters from **using** their student IDs to establish identity when seeking to vote. At the same time, under certain circumstances, a student may be able to present their student ID to establish identity in order to obtain other forms of identification.

29. HB 323 did not change the identity-verifying documents accepted by the DMV under New Hampshire law to prove name, age, or residence, to issue a nondriver's picture identification card. RSA 260:21, I-II.

30. Before HB 323, to register to vote with their local town clerk, a student voter could present a student ID to establish identity, a birth certificate to establish citizenship, and a driver's license, state-issued identification card, vehicle registration, a federally-issued identification card with an address, or a

government-issued check, benefit statement, or tax document as proof of domicile, or, lacking such identification, "any reasonable documentation of having established a physical presence at the place claimed as domicile." RSA 654:12, I(c)(2).

31. After HB 323, that student voter may no longer use his or her student ID to establish identification when registering to vote.

32. A hypothetical student voter without HB 323-conforming identity documentation, may bring the same documents required to register to vote prior to HB 323, first to the DMV to receive a state-issued identification card, and then present that card to the local town clerk to register to vote.

33. As a result of HB 323, some students lacking an accepted form of identification may go to multiple offices with the same documents to register to vote.

34. However, after such a hypothetical student uses a birth certificate and student ID to obtain a NH driver's license or non-driver ID, they could register to vote using only that identification card and no other documentation. That ID would prove identity, age, and domicile, see RSA 654:12, I(b), (c), (d), and the voter could ask an election official to search DMV information to verify the voter's citizenship. See RSA 654:12, VI.

35. State-issued identification cards are only issued by the DMV. The DMV has fourteen locations throughout the entire state that issue identification cards, two of which (Coleridge and North Haverhill) have limited hours. All locations are only available by appointment.

36. According to the source cited below, branches with regular hours operate, depending on the branch, from 8:00 a.m. to 4:30 p.m. or 8:15 a.m. to 4:15 p.m., Monday to Friday, with the Raymond office offering extended hours on Tuesday and Thursday to 5:00 p.m. The other offices do not list their hours and do not have regular hours. No office is open on weekends.[3]

37. As a result of HB 323, students who do not already possess RSA 659:13, II-compliant identification, must obtain a qualifying federal, state, or local photo identification card. If they choose to obtain a state-issued DMV ID in order to be able to register and obtain a ballot. New Hampshire has only fourteen DMV locations.

38. Many DMV locations are inaccessible by public transportation.

39. Hypothetical student voters with disabilities preventing them from driving both may not have a non-voting reason to obtain a driver's license or non-driver identification, not be qualified to obtain a driver's license, or may encounter greater difficulty obtaining transportation to the DMV for a state-issued identification card.

40. Several large high schools in New Hampshire have no DMV within a half-hour car drive and are over an hour public transit ride away. These schools include Plymouth Regional High School, Convale High School, Pinkerton High School, and Littleton High School.

---

[3] New Hampshire Division of Motor Vehicles, *Hours and Locations*, https://www.dmv.nh.gov/hours-and-locations.

41. The minutes of a February 10, 2026 Senate Committee hearing reflect that Tracy Walsh, the Hanover Town Clerk who oversees elections in Hanover, testified that: i) Dartmouth does not allow freshmen to have cars on campus; and ii) the closest DMV location to Dartmouth College is in Newport, New Hampshire, which is more than half an hour away for residents of Hanover. HB 323, requiring the presentation of a government-issued photographic means of identification in order to vote before the Senate Election Law and Municipal Affairs Committee, 2026 Leg., at 2-3 (N.H. February 10, 2026) ("HB 323 February 10 Hearing"), https://gc.nh.gov/bill_Status/pdf.aspx?id=15266&q=HearingRpt.

42. State issued identification cards are subject to a $20 fee except for those over the age of sixty-five who turn in their driver's license to the DMV. RSA 260:21(V)(a). However, individuals can obtain a voucher from their local town or city clerk's office exempting them from the $20 fee if they present proof of domicile and swear or affirm that they do not possess qualified photo identification and require it for voting identification purposes. RSA 260:21(V)(b).

43. SB 660, which amends the voucher process, became operative on August 18, 2026.

44. Students needing to obtain a voucher that would also exempt them from this fee must first go to their town or city clerk's office, present proof of domicile, and swear that they lack other forms of identification.

45. The would-be student voter must then present the voucher at the DMV when applying for a state-issued identification card to waive the fee. RSA

260:21(V)(b); SB 660. That voter must then return to the clerk to register to vote, register to vote at the polls on election day, or register to vote through the absentee registration process if they qualify to register absentee.

46. To obtain a photo ID using a voucher to waive the fee, a hypothetical voter may have to make three trips to two different offices to register to vote without paying a fee.

47. Accordingly, in order to comply with RSA 659:13, II's identity verification requirements for obtaining a ballot, a student who does not have a driver's license could have opted to use his or her student ID prior to HB 323, but must now verify identity with a state or federal driver's license, a state or local identity card, a U.S. armed services ID or other federal ID, passport, or passcard, or acquire one of these forms of identification. If the student chooses to acquire a DMV-issued ID instead, the student must either pay the fee or use the voucher system process by visiting the two offices referenced above.

48. College students who leave their out-of-state driver's licenses or passports at home may not qualify for the voucher system, depending on individual circumstances.

49. A 2024 article written by an associate professor of political science asserts that studies have shown that voting is habit-forming, and people who vote are

more likely to continue to do so than those who have not taken that first step,[4] and less likely to vote if they are prevented from voting.[5]

50. According to a USA Today article, between 2012 and 2022, there was a 28% decrease in teenagers applying for and earning their driver's licenses in New Hampshire.[6]

51. According to the U.S. Department of Transportation, as of 2024, there were 24,496 New Hampshire residents with driver's licenses between ages 18 and 19, and 71,424 with driver's licenses between ages 20 and 24. By comparison, the U.S. Census Bureau reports that in 2024 there were 32,951 New Hampshire residents between the ages 18 and 19, and 87,828 between 20 and 24.

52. The laws regulating the voter registration and ballot processes, RSA 654:12, RSA 659:13, contain some benefits, differing requirements, or exemptions for older voters.

53. For example, in order to register to vote, residents of nursing homes can have their identity confirmed "by the administrator of the facility" without presenting identification cards of any kind. RSA 654:12(I)(d).

---

[4] Alexander Coppock & Donald P. Green, *Is Voting Habit Forming? New Evidence from Experiments and Regression Discontinuities*, 60 American J. of Pol. Sci. 1044, 1046 (2016) ("The overall pattern [of the data] leaves little doubt that voting is habit forming."), https://alexandercoppock.com/coppock_green_2016.pdf.

[5] Michael G. Miller et al, *Restrictive Mail Voting Rules Burden Minority Voters: Evidence From Texas*, 27–28 (Working Paper, Brennan Center, 2024), https://www.brennancenter.org/sites/default/files/2024-03/Miller%20-%20Texas_Rejections.pdf.

[6] Sara Cernikoff, *Gen Z is less likely to have a driver's license. Here's why*, USA Today (May 17, 2024), https://www.usatoday.com/story/graphics/2024/05/17/gen-z-less-likely-get-drivers-license/73678202007/.

54. The expiration rules of RSA 659:13(II)(a) do not apply to voters over age sixty-five if the senior citizen "use[s] an otherwise qualified form of identification without regard to expiration date" to confirm their identity at the polls.

55. People over age sixty-five who—"for reason of health or age"—turn in their driver's licenses before their licenses' expirations, are not subject to a fee, but must complete the application, when applying for a state-issued identification card, RSA 260:21(V)(a), and do not have to go through the voucher process to obtain a fee waiver.

56. New Hampshire does not offer registration at the DMV, at any public office that provide public assistance or services to people with disabilities, or via mail, except mail-in registration for voters with a bona fide excuse, such as disability.

57. New Hampshire does not offer provisional ballots.

58. "[A] a voter 65 years of age or older may use an otherwise qualified form of identification without regard to expiration date." RSA 659:13(II)(a).

**Legislative Consideration of HB 323**

59. The minutes of a February 10, 2026 Senate Committee hearing reflect that Tracy Walsh, the Hanover Town Clerk who oversees elections in Hanover, testified before the New Hampshire legislature to oppose HB 323. She also testified that the Town Clerk's Association opposed HB 323. HB 323 February 10 Hearing, at 2.

60. The Town Clerk's Association is made up of clerks who run elections in towns and cities throughout New Hampshire. RSA 654:8.

61. Ms. Walsh testified that the bill will disenfranchise voters, especially first-time voters. HB 323 February 10 Hearing, at 2.

62. In the two general presidential elections in 2016 and 2020, New Hampshire had the third highest turn-out percentage in the country; more than 1.5 million ballots were cast between the two elections.[7]

63. Shortly after the 2020 election, then-Governor Christopher Sununu stated that, "[h]ere in New Hampshire our elections are secure, accurate, and reliable—there is no question about it."[8]

64. In 2024, more than 60% of eligible New Hampshire residents cast votes in the general election, a higher turnout than in the prior two presidential elections. There was no publicly reported fraud or disruption at the time of a 2024 Tom Jarvis online Bar Association article.[9]

65. At the legislative hearing, Senator Gray claimed that driver's licenses have "security features" that make them more reliable than student identification cards. He did not specify which "security features." HB 323 February 10 Hearing, at 5.

---

[7] N.H. Secretary of State, Voter Turnout Ranking of States: 1996 – 2020 (April 19, 2021), https://www.sos.nh.gov/sites/g/files/ehbemt561/files/documents/2022-04/voter-turnout-charts-4-19-21.pdf.

[8] Press Release, Governor Chris Sununu, Governor Chris Sununu Statement Following Certification of 2020 Election Results (Dec. 20, 2020), https://www.governor.nh.gov/news-and-media/governor-chris-sununu-statement-following-certification-2020-election-results.

[9] Tom Jarvis, *Record Voter Turnout and Smooth Operations Define New Hampshire's 2024 Election*, N.H. Bar Ass'n (2024), https://www.nhbar.org/record-voter-turnout-and-smooth-operations-define-new-hampshires-2024-election/.

66. New Hampshire accepts passports to prove identity, RSA 659:13(II)(a)(4), even though they only need to be renewed every ten years,[10] and under New Hampshire law can be used to prove identity for up to five years after they expire. RSA 659:13(II)(a).

67. Accordingly, after HB 323, a thirty-two-year-old voter can use an expired passport they obtained when they were eighteen to prove their identity, but a current student cannot use their current student identification card to prove their identity.

68. Tracey Walsh explained that someone at Dartmouth College told her that the school verifies a student's identity before issuing student identification. HB 323 February 10 Hearing, at 3.

69. The minutes of a February 10, 2026 Senate Committee hearing reflect that Grace Murray, a former student at Plymouth State University, testified to the New Hampshire Senate in opposition to HB 323 that when she lost her ID, she had to provide her name, student number, proof of enrollment, and proof of campus residency to receive a replacement. *Id.* at 6.

70. The minutes of a February 11, 2025 Senate Committee hearing (SB 223) reflect that Rachel Deane, the Town Clerk of Durham, testified in opposition to SB 223, a companion bill to HB 323 in the Senate that also would have eliminated student identification cards when obtaining a ballot. She explained that Durham,

---

[10] United States Department of State, *Frequently Asked Questions about Passport Services*, https://travel.state.gov/content/travel/en/passports/passport-help/faqs.html.

where UNH is located, frequently sees student identification cards used during elections and registration and that they are a secure form of identification that are only issued after a stringent identification process. Senate Election Law and Municipal Affairs Committee, 2026 Leg., at 5-6 (N.H. February 11, 2026) ("SB 223 February 11 Hearing"), https://gc.nh.gov/bill_Status/pdf.aspx?id=15266&q=HearingRpt.

71. Ms. Deane testified that Durham has never had any claims about fraudulent student identification cards. *Id.* at 6.

72. According to the source cited below, in 2022, Secretary Scanlan organized a "Special Committee on Voter Confidence."[11]

73. That Committee took evidence from across the state at nine different public hearings and took continuous input from the public. *Id.*

74. That Committee found that New Hampshire voters generally have high confidence in New Hampshire elections and that there is no evidence of widespread voter fraud. *Id.*

75. As part of its recommendations, the Committee did not suggest that public confidence or security would or would not be increased by additional voter identification requirements, or by eliminating student identification cards as a valid form of identification. *Id.*

[11] Special Committee on Voter Confidence, *Report of the Special Committee on Voter Confidence*, (Dec. 22, 2025), https://www.sos.nh.gov/sites/g/files/ehbemt561/files/2022-12/final-report.pdf.

76. According to the source cited below, that report was adopted by all but one member of the committee. The argument presented by the lone dissenting member was that "out of state" students should not be voting and only "permanent New Hampshire residents" should be allowed to vote.[12]

77. According to the source cited below, these reports, posted on the Secretary of State's website, were accessible to legislators prior to passage of HB 323.[13]

78. According to the legislative history, in legislative debates on HB 323, lawmakers argued that student identification cards are unreliable because they are often held onto for long periods of time and may not have expiration dates.[14]

79. If any student identification card ever lacked an expiration date, it never constituted a valid form of identification under the pre-HB 323 regime. RSA 659:13(II)(a).

80. To the extent any student identification card was held on to for more than five years after its expiration date, again, they were not valid forms of identification under the pre-HB 323 regime, RSA 659:13(II)(a). Moreover, all forms of identification cards—including passports and driver's licenses—are authorized for

---

[12] Ken Eyring, *Special Committee on Voter Confidence Report*, 3, 4, 5, 10 (Jan. 5, 2023), https://www.sos.nh.gov/sites/g/files/ehbemt561/files/documents/2023-01/final-report-by-ke-remediated.pdf.

[13] New Hampshire Secretary of State, *Special Committee on Voter Confidence*, https://www.sos.nh.gov/elections/special-committee-voter-confidence.

[14] Ethan Dewitt, *NH bill to bar student ID cards to prove voter identity heads to Ayotte's desk*, Valley News (March 8, 2026), https://vnews.com/2026/03/08/nh-senate-republicans-pass-student-id-bill/.

use to prove identification at the polls in New Hampshire for up to five years after their expiration date.

81. The minutes of a February 11, 2025 Senate Committee hearing (SB 223) reflect that during testimony on SB 223, the prime sponsor, Senator Sullivan stated that she was introducing this bill on behalf of "constituents [who] have been clear that they do not want out of state residents who live temporarily on college campuses to vote in our elections." SB 223 Hearing, at 1 (quoted from minutes, not verbatim transcript).

82. Senator Sullivan stated, "If you ask a college student where their home is, they are likely to say it is where their parents live or where they have a home off campus, which disqualifies them from voting in N.H. if their home is in another state." SB 223 Hearing, at 1-2 (quoted from minutes, not verbatim transcript).

83. The minutes of a February 10, 2026 Senate Committee hearing reflect that during the debate on HB 323, lawmakers repeatedly referenced the registration process, HB 323 February 10 Hearing, at 2, 3, even though HB 323 only amended RSA 659:13, which sets out the process of obtaining a ballot. *Compare* RSA 659:13 (setting out the requirements to obtain a ballot), *with* RSA 654:12 (setting out the requirements to register to vote).

84. Valley News reported that Representative Berry, a co-sponsor of the bill, claimed that "[s]tudent IDs have no address verification. No citizenship check. No security features."[15]

85. Proof of identity and proof of domicile are separate components of the voter registration process in New Hampshire and student identification cards were never used to establish domicile or citizenship.

86. Some forms of photo identification can be used to prove both identity and domicile; some cannot. The fact that some forms of photo identity do not establish domicile has never before rendered that form of identification unusable for the purpose of proving identity.

87. Under New Hampshire law, student IDs without addresses have never been a valid way to establish domicile.

88. Out-of-state driver's licenses and passports do not establish current domicile either, but they are still a valid way to establish identity after HB 323. *Compare* RSA 654:12(I)(c) (only New Hampshire driver's licenses or federal identification cards with current addresses—which passports lack—are valid to establish domicile), *with* RSA 654:12(I)(d)(1) (a driver's license from any state may establish identity); RSA 654:12(I)(d)(2) (a passport may establish identity).

---

[15] Ethan Dewitt, *NH bill to bar student ID cards to prove voter identity heads to Ayotte's desk*, Valley News (March 8, 2026), https://vnews.com/2026/03/08/nh-senate-republicans-pass-student-id-bill/.

89. New Hampshire driver's licenses may contain an inaccurate domicile; for example, if someone moved within the state before expiration of the driver's license, it will contain the wrong address.

90. The voter will need to establish proof of current domicile if they want to register and vote in their new voting district, but it does not render the driver's license unusable as a form of identification.

91. Under New Hampshire law, student identification cards have never been a valid way to establish citizenship. Nor have driver's licenses, which nevertheless are still a valid way to establish identity. *Compare* RSA 654:12(I)(a) (driver's licenses, including from New Hampshire, do not establish citizenship), *with* RSA 654:12(I)(d) (a driver's license from any state may establish identity); *see also* RSA 659:13(a)(1) (a driver's license from any state may establish identity).

92. The minutes of a February 10, 2026 Senate Committee hearing reflect that according to the legislative history, in debates on the bill, Senator Lang stated that voters could get free voter identification cards from their town clerk. HB 323 February 10 Hearing, at 5.

93. In fact, as noted, student voters can only receive state-issued identification cards from the DMV and can only receive them for free if they can and do complete the voucher process discussed *supra*.

**Actions of the Secretary of State's Office**

94. On May 29, 2026, the day after the ruling in *NHYM*, Secretary Scanlan's office issued an email to all clerks explaining that qualified voter

affidavits would be available for the fall election for the purposes of proving citizenship.

95. On June 19, 2026, Secretary Scanlan's office sent out another email, explaining that the pending appeal of the decision in *NHYM* would not affect the qualified affidavit rule, again in effect as a result of the decision in *NHYM*, until and unless a stay of that ruling was granted.

96. **On September 4th, the United States Court of Appeals for the First Circuit issued an order denying a stay pending appeal in the *New Hampshire Youth Movement v. Scanlan* case. There, the First Circuit found that Secretary off State's office "Defendants-Appellants immediately reinstated the QVAs and CVAs for the upcoming elections" following this Court's order.**

97. **All electronic communication from the Secretary of State's Office to local election officials relies upon the official's access to the Statewide Voter Registration System ("SVRS") or the accuracy of the official's SVRS-maintained e-mail address.**

98. **The SVRS contains e-mail addresses for clerks, supervisors of the checklist, and moderators, only. The SVRS does not have e-mail addresses for most poll workers (*e.g.*, ballot clerks, selectmen, greeters, and assistant election officials).**

99. **The Secretary of State's Office does not have direct or instantaneous contact with poll workers.**

100. **The Secretary of State's Office relies upon clerks to update the SVRS with accurate information regarding the current names and e-mail addresses of clerks, supervisors, and moderators.**

101. **Local election officials may resign their positions or change their e-mail addresses.**

102. Since HB 323's enactment, the Secretary of State's Office has produced and distributed the Election Procedure Manual, social media outreach, radio ads, statutorily mandated polling place posters, ballot clerk procedure manuals, and student voting guides, all reflecting current New Hampshire election law, including HB 323.

103. Since HB 323's enactment, the Secretary of State's Office has implemented a change in SVRS, updated numerous sections of its website, conducted public speaking events, held election official retreats, and conducted in-person election official trainings across the state, all reflecting current New Hampshire election law, including HB 323.

104. **The Secretary of State's in-person local election official training requires close coordination with the clerk's office in each municipality where training will be held to ensure access to a facility that is large enough to accommodate at least 100 trainees before the Office can schedule in-person training.**

105. **The Office notifies clerks, supervisors, and moderators of in-person training opportunities and online election resources through the SVRS and by e-mail.**

106. **Only clerks and supervisors of the checklist may obtain access to the SVRS.**

107. **Between August 18 and September 1, 2026, the Secretary of State's Office trained 1,077 local election officials through 14 training sessions across the state. Each training session educated attendees on how to verify voter identities, including HB 323's amendment repealing student IDs as permissible voter identification verification.**

108. **The Secretary of State's Office does not conduct in-person clerk, supervisor, and moderator pre-election administration training sessions between primary and general elections, so no training sessions are currently scheduled between now and the general election. The Office will participate in the New Hampshire City & Town Clerks Association Conference on October 6 – 9, however, which will include training sessions for clerks and deputy clerks only, as described below.**

**Lawsuit & Elections Calendar**

109. New Hampshire held **state primary elections on September 8, 2026**.

110. New Hampshire will hold its November 3, 2026 general election **53** days after the **date of this filing**.

111. Open Democracy filed its Complaint and Motion for Preliminary Injunction 130 days after Governor Ayotte signed HB 323 into law.

112. Open Democracy filed its Complaint and Motion for Preliminary Injunction 70 days after HB 323 went into effect.

**September 8, 2026 Primaries**

113. Under New Hampshire law: "Every applicant for an absentee ballot shall provide verification before being issued an absentee ballot. Verification shall be satisfied by one of the following methods: (a) Including a copy of the voter's photo identification with the absentee ballot application. The identification shall meet the requirements of RSA 659:13, II(a); (b) Including a notarized signature on the absentee ballot application form; or (c) Personally presenting a qualifying photo identification, as defined in RSA 659:13, II(a), to the city or town clerk or their designee prior to the issuance of the absentee ballot." RSA 657:17-c, I.

114. On July 20 and 21, 2026, the Secretary of State's Office ordered the September 8, 2026 absentee ballots from the Office's third-party printer. The vendor prints ballots in six separate printing runs. In no particular order, the September primaries runs were: (1) Democrat hand-count ballots (for jurisdictions without machines); (2) Republican hand-count ballots; (3) Democrat Dominion-count ballots (for jurisdictions with Dominion machines); (4) Republican Dominion-count ballots; (5) Democrat VotingWorks-count ballots (for jurisdictions with VotingWorks machines); and (6) Republican VotingWorks-count ballots.

115. On July 27, 2026, the Secretary of State's Office sent its first batch of absentee ballots to local election officials by UPS. UPS records indicate that the

first batch was received on July 28, 2026. The Office also hand-delivers absentee ballots to eight jurisdictions. August 18, 2026 was the date the last jurisdiction received its absentee ballots.

116. Local election officials mail absentee ballots after receiving them from the Secretary of State's Office. So, while the date of the first absentee ballot cast is not current known, the earliest date would have been August 19, 2026.

117. **Between September 9 and 17, 2026, Secretary of State's Office will complete its administration of the September primaries, as described in the Single Supplemental Timeline. *See* ECF No. 45, ¶¶ 10-18 (Sept. 11, 2026). This includes aggregating and reporting final statewide results for approximately 900 federal, state, and county offices, counting device audits and report, party nominee and vacancy management, administration and oversight of recounts, and Ballot Law Commission appeals. *See id.***

**November 3, 2026 General Election**

118.

119. **Beginning September 18, 2026, the Secretary of State's Office plans to design, proof, finalize, print, and deliver ballots and returns of votes. *See id.* at ¶¶ 19-20, 22-24, 26, 29.**

120. **The November general election requires 320 unique ballots. Each ballot needs to be created in multiple different styles, including sample, official election day, absentee, and federal office only.**

121. **Absentee ballots may be transmitted electronically to UOCAVA voters.**

122. **For the November general election, the absentee ballot process requires two separate printings (hand-count and machine), scoring of machine ballots, and folding of scored machine ballots, before delivery to the Secretary of State for distribution to city and town clerks.**

123. **For the November general election, the election day ballot process is the same as the absentee process, but involves printing and distributing greater numbers of ballots.**

124. **By September 19, 2026, the Secretary of State's Office will have transmitted UOCAVA ballots to each town and city clerk, and those clerks will have transmitted ballots to all UOCAVA voters who requested a ballot, and clerks will continue to do so as applications are received and accepted. *See id.* at ¶¶ 20-21.**

125. **By September 29, 2026, the Office will begin shipping all absentee ballot packages to town and city clerks. *See id.* at ¶ 22.**

126. **On October 6 through 9, 2026, the Secretary of State and key staff will attend the New Hampshire City and Town Clerk's Association Annual Conference in Nashua, New Hampshire. *See* ECF No. 45, ¶ 25. The event includes two election training sessions for clerks on Thursday, October 8 (11:00 a.m. to 12:00 p.m. and 1:30 p.m. to 4:00 p.m.). Conf. Agenda available at https://nhctca.com/images/meeting/100626/nhctca_agenda.pdf**

**(last visited Sept. 11, 2026). The Secretary of State also holds a roundtable discussion from 4:00 p.m. to 4:30 p.m. that day. *See id.* Only clerks, deputy clerks, or qualified assistants may attend. *See* NHCTCA Const. & By-Laws art. III, § 1 available at New Hampshire City Town Clerks' Association - Constitution and By-Laws (last visited Sept. 11, 2026). The event typically draws between 150-200 attendees, and elections-related training typically focuses on post-poll closing matters such as election night reporting.**

127. **By October 14, 2026, the Office plans to begin shipping all election day ballot packages to town and city clerks. *See* ECF No. 45, ¶ 26.**

128. **RSA 656:20 mandates that the Secretary of State's Office complete delivery of November general election ballots to town and city clerks on or before October 27, 2026.**

**New Hampshire's Interest in HB 323**

129. Article I, Section 4 of the United States Constitution requires that New Hampshire prescribe the "Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing [*sic*] Senators."

130. New Hampshire has a state interest in the efficient and orderly administration of elections.

131. New Hampshire ballots are anonymous, and once an anonymous ballot is cast, it will be counted.

132. If New Hampshire discovers that any ballot had been wrongfully cast, irrespective of the voter's intent, the ballot cannot be clawed back or discounted, and the election results cannot change.

133. New Hampshire has a state interest in counting only the votes of eligible voters.

134. New Hampshire has a state interest in preventing intentional and unintentional wrongful voting before it happens.

135. New Hampshire has a state interest in regulating all phases of the electoral process, including ballot access.

136. New Hampshire has a state interest in election integrity.

137. New Hampshire has a state interest in high voter confidence in the integrity of New Hampshire's elections.

138. New Hampshire DMV-issued Real ID-compliant identification cards (driving and non-driving) are subject to federal statutory and regulatory requirements. Among other things, federal regulations require that "States must include document security features on REAL ID driver's licenses and identification cards designed to deter forgery and counterfeiting, promote an adequate level of confidence in the authenticity of cards, and facilitate detection of fraudulent cards in accordance with this section." 6 C.F.R. 37.15(a). "REAL ID driver's licenses and identification cards must contain at least three levels of integrated security features that provide the maximum resistance to persons' efforts to—(1) Counterfeit, alter, simulate, or reproduce a genuine document; (2) Alter, delete, modify, mask, or

tamper with data concerning the original or lawful card holder; (3) Substitute or alter the original or lawful card holder's photograph and/or signature by any means; and (4) Create a fraudulent document using components from legitimate driver's licenses or identification cards." 6 C.F.R. 37.15(b).

139. New Hampshire schools do not issue Real ID-compliant identification cards, nor are they required by federal law to integrate security features into their cards.

140. The New Hampshire Department of State has been implementing HB 323 and providing guidance to local election officials regarding the implementation and application of HB 323 since at least April 23, 2026. *See* infra para. 3.

141. **The DMV is required by statute to offer a nondriver's picture identification card to any resident who is 12 years of age or older and does not possess a driver's license. RSA 260:21, I.**

142. **The fee for that card is $20. RSA 260:21, V(a). A person who requires a photo identification card only for voter identification purposes may obtain a voucher from his or her town or city clerk exempting the voter from the identification card fee. *Id.***

143. **To obtain a voucher, the applicant must provide their name, domicile address, and mailing address, and then swear or affirm under penalty of law that (a) they require a photo identification for voting purposes, and (b) they do not possess a form of identification that meets the requirements of New Hampshire's election laws. RSA 260:21, V(b). The**

**clerk must swear or affirm that the person identified on the voucher has proof of domicile in the city or town. *Id.* An earlier version of the law required the person seeking a waiver to be listed on the voter checklist in that city or town. *See* SB 660, *supra* ¶¶ 43, 45.**

144. **That person must then travel to the DMV and present, along with the standard non-driver ID application, the required identity and residency documentation, and the voucher at the DMV to obtain an identification card for voting purposes, marked "for voter identification only." RSA 260:21, V(a); *cf.* N.H. Admin. Code § Saf-C 1011.07 (Non-Driver Identification Card).**

145. **In its September 1, 2026 order, the Court found that the uncontested evidence presented at the August 31st hearing was that at least two New Hampshire DMVs are unable to process and/or issue the "voter identification" card.**

146. **The "Apply for your First Drivers License/Non Driver ID page under the "Non-Driver ID Card" tab states, "Information about the Voter Identification Law of 2012 along with an Explanatory Document on how the Voter Identification law will be implemented can be found at the New Hampshire Secretary of State's website or by contacting the Secretary of**

**State Elections Division,"[16] and provides three links, two which are broken.[17]**

147. **As indicated on Exhibit 42, on April 20, 2026, Open Democracy sent a DMV Right to Know Request to the New Hampshire DMV inquiring about the availability of "voter identification only" cards. On April 23, 2026, the New Hampshire DMV sent a response indicating that the DMV had not issued any "voter identification only" cards to anyone under the age of 20 in the State.**

148. **According to the Secretary of State's website, a voter may request an absentee ballot from the town or city clerk up to six months before the election for which the voter is requesting the ballot. For the 2026 State General Election, voters could request an absentee ballot starting on May 3, 2026.**

149. **On August 10, 2026, Secretary of State Scanlan issued a press release announcing that "all absentee ballots for the September 8, 2026 state primary election have been mailed out to every city and town clerk's office in New Hampshire."**

150. **In 2020, then Secretary of State, William Gardner, issued a memorandum to all state Election Officials which stated, "absentee ballots**

---

**[16] New Hampshire Division of Motor Vehicles, https://www.dmv.nh.gov/ (accessed Sep. 9, 2026).**

**[17] https://sos.nh.gov/elections/information/election-laws/voter-identification-law/; https://www.sos.nh.gov/elections/information/contact/.**

**are not typically available for overseas voters until 45 days before an election and for absentee voters in the United States until approximately 30 days before an election."**

151. **The Secretary of State has not issued any such press release relating to absentee ballots regarding the General Election to be held on November 3, 2026.**

152. **Until and unless the town and city clerks receive final absentee ballot forms from the Secretary of State, the clerk has no absentee ballots to send to any voter and no voter can mark and return any absentee ballot.**

153. **No absentee ballots have been returned by voters for the November 3, 2026 General Election.**

154. **Once a clerk receives and verifies a request for an absentee ballot, they must "without delay, personally deliver . . . or mail to the applicant the appropriate ballot and materials." RSA 657:15, I.**

155. **The deadline to request an absentee ballot by mail for the 2026 General Election is 12:00 p.m. the day before the election, November 2, 2026. The deadline to request and return an absentee ballot in person is 5:00 p.m. the day before the election, November 2, 2026.**

156. **Uniformed and Overseas (UOCAVA) Voters are those who are 1) uniformed service members or 2) temporarily residing outside the United States. RSA 654:3.**

157. **Uniformed service members are issued military identification cards. Individuals who reside outside of the United States possess U.S. passports. Therefore, UOCAVA voters are highly unlikely to rely on student identification cards to identify themselves for purposes of obtaining a ballot.**

158. **UOCAVA voters may request absentee ballots using the Federal Post Card Application (FPCA) or through their local town/city clerks.**

159. **Clerks are required by federal law to send ballots at least 45 days before an election (September 19, 2026, for the upcoming General Election), to UOCAVA voters who have previously submitted a request for this election cycle.**

**Statement of Plaintiff's Asserted Facts Disputed by Defendants**

160. A student voter can go to the DMV, present a birth certificate and student ID and present proof of residency—such as lease or rental agreements, tax bills, or notarized statements by parents and guardians—and receive a state-issued identification card.

161. The legislative history contains no evidence that any student IDs were fraudulently or negligently issued by any school in New Hampshire. During the debates on HB 323, no one identified any instance of any voter using a student identification card to vote fraudulently or improperly.

162. The legislative history does not include any evidence that schools do not properly verify student identity before issuing a student ID.

163. In a separate but recent case this Court found that "approximately 38% of U.S.-born eligible New Hampshire voters do not possess a passport." *N.H. Youth Movement v. Scanlan*, 2026 WL 1500857, at *6, and "only approximately 11% of eligible voters in New Hampshire who possess a passport . . . carry those documents with them regularly." *Id.*

164. This Court, citing Dr. Mayer's expert testimony, has found that laws placing unnecessary burdens on voting lowers confidence in elections as "voters who have a frustrating experience at the polls, people who try to vote and can't, that they are less—they are more likely to report low confidence in election outcomes." *NHYM*, 2026 WL 1500857, at *18.

165. This Court has found that this concern is even greater when burdens are placed on first-time voters, as it could undermine their confidence in elections for the rest of their lives.[18]

166. This Court has found that New Hampshire's election system is "designed to rely intensely on election day registration." *NHYM*, 2026 WL 1500857, at *31.

167. This Court has found that because New Hampshire relies on election day registration, voters who do not or cannot utilize same-day registration are

[18] Michael G. Miller et al, Restrictive Mail Voting Rules Burden Minority Voters: Evidence From Texas, 27–28 (Working Paper, Brennan Center, 2024), https://www.brennancenter.org/sites/default/files/2024-03/Miller%20-%20Texas_Rejections.pdf.

necessarily compelled to navigate a system with one of the highest "costs of voting" in the country. *NHYM*, 2026 WL 1500857, at *31.

168. In an opinion issued on May 28, 2026, after a bench trial in *New Hampshire Youth Movement v. Scanlan*, Judge Samantha D. Elliot found that the defendants, who are the same defendants named in this Complaint, "agreed that instances of voter fraud are 'miniscule' and virtually non-existent in [New Hampshire.]" 2026 WL 1500857, at *17.

169. In that opinion, the Court found that:

- "Wrongful voting, meaning unqualified voters intentionally or unintentionally casting ballots, is extremely rare in New Hampshire," and that only forty-seven cases could be identified between 1998 and 2024, a period in which 8.3 million votes were cast. 2026 WL 1500857, at *17;
- Noncitizen voting "is essentially non-existent," with at most 26 instances in New Hampshire between 1998 and 2024, *id.*;
- "Voter fraud, meaning unqualified voters intentionally casting ballots while knowing that they are not entitled to vote, is even rarer in New Hampshire[.]" *Id.*

170. On August 5, 2026, defendants in the *NHYM* litigation, who are the same defendants in this case, moved to stay the injunction issued in *NHYM*. This action by the defendants, if it were to be granted, would change a voter documentation rule that has been in place since May 29, 2026 for the fall election

and which, according to the notice sent to the clerks on May 29, the clerks have been instructed they must follow.

171. **The Secretary of State's office has all of the email addresses of local election officials and to the extent it does not, the office can contact officials by telephone and update their email addresses in order to send out a one-line email that informs them that a preliminary injunctions was issued and that student identification cards are acceptable forms of identification at the polls.**

172. **The clerks have the email addresses of most poll workers and are otherwise able to communicate with them regarding a court action which finds that student identification cards are an acceptable form of identification at the polls.**

173. **The clerks have direct access to poll workers and in the 49 days that remain between the hearing on September 15th and the General Election on November 3rd can make contact with those poll workers to inform them of the preliminary injunction, which can be a one-line email stating that student identification cards are an acceptable form of identification at the polls.**

174. **The clerks will be aware of any resignation or change of email address and can communicate with local election officials accordingly.**

175. **If the Secretary of State follows the typical timeline noted in the 2020 memorandum, absentee ballots would be sent to town clerks on or about October 4, 2026.**

176. **In response to this Court's direct question, Secretary O'Donnell testified at the 31 August hearing that the Secretary of State's office is able to quickly communicate court holdings to election officials.**

177. **The DMV website[19] simply directs the reader to the Secretary of State's webpage and does not provide any additional information regarding how voters can obtain an identification card for voting purposes only.**

**Statement of Defendants' Asserted Facts Disputed by Plaintiff**

178. **Whether any state or federal law or regulation requires schools to issue student identity cards showing the student's legal name.**

179. **Whether** New Hampshire has **ever** accepted student IDs **as stand-**alone proof of identity to obtain a DMV-issued nondriver's picture identification card. RSA 260:21, II(6) (allowing the DMV to issue IDs based on "[o]ther documentation recognized by the department for other purposes." Department of Motor Vehicles, *Identity and Residency Requirements*, https://www.dmv.nh.gov/sites/g/files/ehbemt416/files/inline-documents/dsmv634b.pdf. (listing student IDs, in conjunction with birth certificates, as a valid way of proving one's identification).

---

[19] **New Hampshire Secretary of State, https://www.sos.nh.gov/.**

180. **Whether the Secretary of State's Office will begin direct administration of the November 3, 2026 general election on September 18, 2026, as described in the Single Supplemental Timeline, notwithstanding the August 18 through September 1, 2026 training of 1,077 local election officials. *See* ECF No. 45, ¶¶ 19-20, 22-24, 26, 29.**

181. **Whether election administration of the November general election includes candidate and election finance management that diverts resources from the Secretary of State Office's other election responsibilities, at statutory intervals. And to what degree does this diversion occur pursuant to RSA 664:6 and 7, because candidates and political committees must file statements of receipts and expenditures with the Secretary of State's Office at certain intervals set by law: June 17, 2026; August 19, 2026; September 2, 2026; September 16, 2026; October 14, 2026; October 28, 2026; November 25, 2026?**

182. **Whether the Secretary's third party printer typically requires one week to print absentee ballots after getting the Secretary of State's order for the count of each of the 320 ballots.**

183. **Whether the Secretary's third party printer prefers one-month lead time, but printing election day ballots typically requires up to two weeks. And whether the election day ballot printing process begins after the absentee ballot printing process has been completed.**

184. **Whether the absentee ballot shipping process typically requires planning two or more weeks ahead to meet this operational deadline. And whether planning and execution include (among other things) proofing absentee ballots, managing the printing process through the third party printer, packing ballots with associated instructions and materials, and coordinating UPS shipping.**

185. **Whether the election day ballot shipping process typically takes up to two weeks to complete, and whether it involves (among other things) proofing official ballots, managing the printing process through the third party printer, packaging the boxes with the ballots, and coordinating UPS shipping.**

186. **Whether clerks promptly update local election official name or e-mail changes in the SVRS, whether clerks are promptly notified of local election official resignations or changes, and whether vacated local election official positions are promptly filled.**

187. **Whether Plaintiff's August 31st hearing testimony, where Ms. Zink testified that she was told that two New Hampshire DMVs were unable to process or issue "voter-only identification" cards, was reliable or accurate.**

Dated: September 11, 2026

Respectfully submitted,

*/s/ Henry C. Quillen*
Henry C. Quillen (Bar No. 265420)
WHATLEY KALLAS, LLP
159 Middle Street, Suite 2C
Portsmouth, NH 03801
Tel: (603) 294-1591
Fax: (800) 922-4851
hquillen@whatleykallas.com

*/s/ Benjamin Horton*
Benjamin Horton (admitted *pro hac vice*)
John Bonifaz (admitted *pro hac vice*)
Ben Clements (admitted *pro hac vice*)
Courtney Hostetler (to apply *pro hac vice*)
FREE SPEECH FOR PEOPLE
28 S. Main Street, Suite 200
Sharon, MA 02067
Tel: (617) 244-0234
chostetler@freespeechforpeople.org
bhorton@freespeechforpeople.org
bclements@freespeechforpeople.org
jbonifaz@freespeechforpeople.org

Michael Gardener (admitted *pro hac vice*)
Courtney Herndon (admitted *pro hac vice*)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Tel: (617) 348-1642
msgardener@mintz.com

Yeilee Woo (admitted *pro hac vice*)
Sherwet H. Witherington (admitted *pro hac vice*)
Hannah Edge (admitted *pro hac vice*)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
919 Third Avenue
New York, New York 10022
Tel: (212) 692-8153; (212) 692-8188
ywoo@mintz.com
shwitherington@mintz.com

*Attorneys for Plaintiff*
*Coalition for Open Democracy*

DEFENDANTS DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State and JOHN M. FORMELLA, in his official capacity as New Hampshire Attorney General

By their attorney,

JOHN M. FORMELLA
ATTORNEY GENERAL

Date: September 11, 2026

*/s/ Michael P. DeGrandis*

Matthew T. Broadhead, N.H. Bar No. 19808
Associate Attorney General
Michael P. DeGrandis, N.H. Bar No. 277332
Assistant Attorney General
James H. Holl, N.H. Bar No. 279633
Assistant Attorney General
matthew.t.broadhead@doj.nh.gov
michael.p.degrandis@doj.nh.gov
james.h.holl@doj.nh.gov