**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF NEW HAMPSHIRE**

COALITION FOR OPEN DEMOCRACY,

*Plaintiff*,

v.

DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State, and JOHN M. FORMELLA, in his official capacity as New Hampshire Attorney General,

*Defendants*.

Case No. 1:26-cv-00647-JL-TSM

**DEFENDANTS' EMERGENCY RENEWED MOTION TO STAY PRELIMINARY INJUNCTION ORDER PENDING APPEAL**

Defendants New Hampshire Secretary of State David M. Scanlan and New Hampshire Attorney General John M. Formella, each in their official capacities, by and through counsel, the Office of the Attorney General, submit this Emergency Renewed Motion to Stay Preliminary Injunction Order (ECF No. 64) Pending Appeal.

**BACKGROUND & PROCEDURAL POSTURE**

During closing arguments at the preliminary injunction hearing on September 16, 2026, Defendants asked the Court to deny Plaintiff's Motion for Preliminary Injunction. Defendants also orally requested that, if the Court opted to grant injunctive relief, it stay the injunction for sufficient time to permit an appeal. The Court's Order Granting Partial Preliminary Injunctive Relief (ECF No. 68) did not address Defendants' request for a stay, so Defendants understood that to be tacit denial of their oral motion.

Earlier today, the First Circuit Court of Appeals issued an Order of Court denying Defendants' Emergency Motion to Stay Preliminary Injunction Pending Appeal, without prejudice. The First Circuit directed that Defendants must first renew their motion for a stay in

the district court. After the district court rules, Defendants may renew their motion to stay in the First Circuit. The First Circuit ordered further that if Defendants renew their motion in the First Circuit, Plaintiff's response to the renewed motion will be due by 5:00 p.m. on the second calendar day following Defendants' renewed motion's filing.

Accordingly, Defendants respectfully request that this Court order Plaintiff to file a response to this Emergency Motion to Stay by 5:00 p.m. on the second calendar day following this filing, October 9, 2026, and that the Court expedite consideration of Defendants' Motion.

## STANDARD OF REVIEW

A party may move the district court for a stay pending appeal of a district court order issuing a preliminary injunction. *See* Fed. R. Civ. P. 62(c). Courts evaluate requests for stays pending by applying four considerations:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Gordon-Darby Holdings v. Quinn*, 174 F.4th 255, 258 (1st Cir. 2026) (citing, *inter alia*, *Nken v. Holder*, 556 U.S. 418, 433–34 (2009)). The most critical factors are the likelihood of success and irreparable injury to the movant, absent a stay. *New York v. Trump*, 133 F.4th 51, 66 (1st Cir. 2025).

## ARGUMENT

Defendants are likely to succeed on the merits of their appeal because the Court incorrectly interpreted how RSA 659:13 and RSA 654:12 operate. Moreover, the Court's decision comes too close in time to the November general election and establishes standards materially different from those applied in the September primary elections. Either of these dynamics warrant a stay of the injunction standing alone, and the balance of the equities tip

dramatically in favor of a stay, as does the public interest. Accordingly, Defendants respectfully request that this Court stay the Preliminary Injunction Order (ECF 65).

## I. Defendants' Appeal Will Likely Succeed on the Merits Because the Court Misinterpreted State Election Law

The Court concluded that student IDs could still be used to both obtain a ballot and prove identity when registering to vote under RSA 654:12, I(d)(4) and RSA 659:13, I(c)(1) and (3), even though the New Hampshire legislature removed student IDs as a valid way to prove a person's identity for the purpose of obtaining a ballot on election day. The Court found that guidance issued by the Secretary of State's office in April 2026, informing the public that student IDs could not be used to prove identity in these processes, was wrong, unconstitutional, and had to be corrected at this late date. The Court concluded that the Secretary had not justified these additional restrictions. The injunction issued enjoins the Secretary from enforcing the April 2026 guidance and directs the Secretary to issue revised guidance consistent with the federal Court's view of New Hampshire state law.

Defendants respectfully disagree with the Court's interpretation of New Hampshire law. When interpreting state law, a federal court applies "the rules of statutory construction that the state's highest court would follow." *Bourgeois v. TJX Co., Inc.*, 129 F.4th 28, 33 (1st Cir. 2025) (citations and quotation marks omitted). When construing a statute, the New Hampshire Supreme Court "first look[s] to the language of the statute itself, and, if possible, construe[s] that language according to its plain and ordinary meaning." *Appeal of Vasquez*, 175 N.H. 450, 453 (2022). It "interpret[s] the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." *Id.* It "construe[s] all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result." *Id.* It "consider[s] words and phrases, not in isolation, but in the context of the statute as a whole in order to better

discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme." *Id.*

"All statutes dealing with the same subject matter are to be considered in interpreting any one of them." *In re Liquidation of the Home Ins. Co.*, 166 N.H. 84, 88–89 (2014) (citation and quotation marks omitted). "Where reasonably possible, statutes should be construed as consistent with each other." *Id.* at 89. Accordingly, "[w]hen interpreting two statutes which deal with a similar subject matter," the New Hampshire Supreme Court "will construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislature purpose of the statute." *Id.* "Moreover, in the case of conflicting statutory provisions, the specific statute controls over the more general statute." *Sanborn Reg'l Sch. Dist. v. Budget Comm.*, 150 N.H. 241, 242 (2003) (citation omitted).

It is also "well established" that "an interpretation of a statute by the agency charged with its administration is entitled to deference." *Appeal of Town of Seabrook*, 163 N.H. 635, 644 (2012) (citation omitted). "The deference afforded, however, is not absolute." *Id.* The New Hampshire Supreme Court "will not defer to an agency's interpretation if it clearly conflicts with the express statutory language or if it is plainly incorrect." *Id.* But when a statute is of "doubtful meaning" or "ambiguous," the agency's interpretation is entitled to "substantial deference." *State v. Priceline.com, Inc.*, 172 N.H. 28, 38 (2019) (citations omitted).

Applying these rules of interpretation to RSA 654:12, I(d)(4) and RSA 659:13, I(c)(1) and (3) reveals that the Court's analysis was incorrect. RSA 659:13, I, requires that a voter "present proof of his or her identity meeting the requirements of paragraph II" in order to obtain a ballot. RSA 659:13, I(b). Paragraph II of that statute provides in relevant part:

> Only the following forms of identification bearing a photograph of the voter shall satisfy the identification requirements of paragraph I:

> (1) A driver's license issued by any state or the federal government.
> (2) An identification card issued under RSA 260:21, RSA 260:21-a, or RSA 260:21-b or a nondriver's identification card issued by the motor vehicles division, department, agency, or office of any other state.
> (3) A United States armed services identification card.
> (4) A United States passport or passcard.

RSA 659:13, II(a)(1)–(4) (emphasis added). HB 323 specifically removed student IDs from this list. HB 323, Ch. 20 at 2:7-8, 16-30 (2026 Sess.) (Ex. A). The phrase beginning "[o]nly the following forms of identification" was added during this same legislative session. SB 223-FN, Ch. 243 at 2:8 (2026 Sess.) (replacing "The following forms" with "Only the following forms") (Ex. B).

The word "only" means "as a single fact or instance and nothing more or different" or "solely, exclusively." *Only*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/only (last visited October 5, 2026). Thus, as amended, RSA 659:13, II(a)(1)–(4) provides an exclusive list of those forms of identification that can be used as proof of identification in order to obtain a ballot under RSA 659:13, I. Student IDs are not included on that list. Student IDs are therefore not valid proof of identification under the "plain and ordinary meaning" of the statute. *Appeal of Vasquez*, 175 N.H at 453.

The Court disagreed, concluding that student IDs may still be considered under RSA 659:13, I(c)(1) and (3). RSA 659:13, I(c)(1) provides that "[i]f the voter does not have a valid photo identification, the ballot clerk shall direct the voter to see the supervisor of the checklist." RSA 659:13, I(c)(1). RSA 659:13, I(c)(3) in turn provides:

> The supervisor of the checklist shall review the voter's qualifications and determine if the voter's identity can be verified. If the supervisor of the checklist determines that the voter's qualifications and identity are established, the voter shall be allowed to vote. If the supervisor of the checklist determines that the voter's qualifications and identity have not been established, the voter shall not be allowed to vote. A voter not allowed to vote as a result of the determination of the supervisor of the

> checklist may take an immediate appeal to the superior court as provided in RSA 654:12, V.

This language, however, does not authorize the supervisor of a checklist to consider forms of photo identification ***not*** included in the exclusive list in RSA 659:13, II(a) as proof of identification. And such an interpretation would functionally nullify HB 323. RSA 659:13, I(c)(3) allows a supervisor to "review the voter's qualifications and determine if the voter's identity can be verified." It does not say that a supervisor can review unauthorized forms of ID to deem identity proven and issue a ballot.

RSA 659:13, II(a) contains an express and exclusive list of the forms of photo identification that are valid to obtain a ballot. To conclude that the New Hampshire legislature nonetheless intended to authorize the supervisor of a checklist to consider a form of photo ID expressly removed from that list, and that it did so *sub silento*, is incompatible with how the New Hampshire Supreme Court interprets statutes. *See Appeal of Vasquez*, 175 N.H. at 453 (admonishing courts to "construe all parts of a statute together to effectuate its overall purpose").

The result would remain the same, however, even if the legislature's intent were somehow ambiguous or in doubt. Under those circumstances, as discussed, an agency's interpretation is entitled to "substantial deference." *Priceline.com, Inc.*, 172 N.H. at 38; *see also Appeal of Town of Seabrook*, 163 N.H. at 644. The Secretary of State's office has offered a consistent interpretation of whether student IDs can be used to obtain a ballot since HB 323's enactment. *See, e.g.*, N.H. Elec. Proc. Man., Sec'y of State at 12 (EPM 2026) (Ex. F). That interpretation does not "clearly confict[] with the express statutory language" and is not "plainly incorrect." *Appeal of Seabrook*, 163 N.H. at 644. It is therefore entitled to deference.

While this does not expressly resolve whether student IDs are valid forms of identification in order to register to vote under RSA 654:12, I(d)(4), it is undisputed at this

juncture (and acknowledged by the Court in its Order) that the Secretary of State's office reads RSA 654:12 and RSA 659:13 "in harmony" with one another. ECF Doc. No. 60 ¶ 9; Oct. 2, 2026 Order at 14. This finds support in the New Hampshire Supreme Court's precedent that "[a]ll statutes dealing with the same subject matter are to be considered in interpretating any one of them." *In re Liquidation of the Home Ins. Co.*, 166 N.H. at 88–89. Nor can there be any doubt that the language in RSA 659:13, II(a), when properly construed, is more specific than the general language in RSA 654:12, I(d). It therefore "controls" to the extent these statutes conflict. *Sanborn Reg'l Sch. Dist.*, 150 N.H. at 242 (2003) (citation omitted).

For all of these reasons, the Court erred when it concluded the Secretary's April 2026 guidance was inconsistent with RSA 654:12(d)(4) and RSA 659:13(c)(1) and (3). At best, these state statutory provisions are ambiguous and the Secretary's interpretation is entitled to deference at this late stage in the election process. The Secretary has therefore met his burden under the first stay factor.

## II. New Hampshire Will Suffer Irreparable Harm Absent a Stay for the Reasons Expressed by the *Purcell* Principle and the Doctrine of Laches

Under well-established equitable principles, the State is irreparably harmed by an injunction this close to the November general election. The *Purcell* principle requires judicial restraint to avoid voter and administrator confusion. Additionally, Open Democracy's unjustified delay in seeking preliminary injunctive relief is substantially prejudicial to the State's general election administration.

### A. The *Purcell* Principle Bars an Injunction on the Eve of the November General Election

The Court should not have enjoined the State's identity verification procedures just 32 days before the election. Indeed, the Court correctly denied injunctive relief prior to the September primaries because the *Purcell* principle required it to do so. *See* ECF No. 43 at 1-2.

The same reasons compelling the conclusion that Purcell barred injunctive relief prior to the primaries are present here, and may be even greater. The Court's order announces a new interpretation of state law that state election officials have not been trained to administer, and a new way of interpreting the relationship between statutory provisions. The Court's order consequently raises more questions than it answers. For example, if student IDs cannot be accepted as automatic proof of identity, when and under what circumstances do they become other reasonable proof of identification? The answer to this questions is unknown and the Secretary has no time left to try to figure out nuanced answers and train officials accordingly.

The Supreme Court has warned that "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (per curiam). It has also consistently held that each state "has a compelling interest in protecting voters from confusion" and "preserving the integrity of its election process." *See, e.g.*, *Burson v. Freeman*, 504 U.S. 191, 199 (1992). That is why Supreme Court decisions have "repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) (collecting cases). The *Purcell* principle forecloses the preliminary injunction issued here.

"[E]lections are complex and election calendars are finely calibrated processes, and significant upheaval and voter confusion can result if changes are made late in the process." *Alpha Phi Alpha Fraternity v. Raffensperger*, 587 F. Supp. 3d 1222, 1324 (N.D. Ga. 2022). "[A]t every step, state and local officials must communicate to voters how, when, and where they may cast their ballots through in-person voting on election day, absentee voting, or early voting."

*Democratic Nat'l Comm. v. Wis. State Legis.*, 592 U.S. 1039, 1043 (2020) (Kavanaugh, J., concurring). So, courts should be circumspect and exercise judicial restraint when an election is near. *See id.* at 1044.

> That important principle of judicial restraint not only prevents voter confusion but also prevents election administrator confusion—and thereby protects the State's interest in running an orderly, efficient election and in giving citizens (including the losing candidates and their supporters) confidence in the fairness of the election.

*Id.* (collecting cases). "When an election is close at hand, the rules of the road should be clear and settled." *Id.* at 1043.

The *Purcell* principle operates any time a material change to election procedures happens close to an election—voting need not have already begun.

> [T]he *Purcell* principle—reflects a bedrock tenet of election law: When an election is close at hand, the rules of the road must be clear and settled. Late judicial tinkering with election laws can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others. It is one thing for a State on its own to toy with its election laws close to a State's elections. But it is quite another thing for a federal court to swoop in and re-do a State's election laws in the period close to an election.

*Merrill v. Milligan*, 142 S. Ct. 879, 880-81 (2022) (Kavanaugh, J., concurring). The principle operates as "a sensible refinement of ordinary stay principles for the election context[.]" *Id.* at 881. The State has an "extraordinarily strong interest in avoiding late, judicially imposed changes to its election laws and procedures." *Id.*

The Court is very familiar with the Secretary's efforts over the last five months to train local election officials and produce resources and guides for election administration, so Defendants will not belabor those pointed here. *See, e.g.*, ECF No. 63 at 10-11. The injunction requires the Secretary to update guidance to local election officials "clarifying that, although student identification cards are no longer expressly valid to establish voter identity under RSA 659:13, election officials may consider them, along with other available evidence, when

determining voter identity under RSA 654:12(d)(4) and RSA 659:13(c)(1) and (3)." Prelim. Inj. Order, ECF No. 64 (Oct. 5, 2026). Since this clarification would be a complete reversal of prior guidance and training, it will be inconsistent with the Election Procedure Manual, the statutorily required polling place posters, webpages, and other manuals such as the ballot clerk procedure manual. Changing all these materials is impracticable just 28 days from the election, and these are the documents used by election officials for reference on election day, now with some portions out-of-date. Notably, "officials" aren't limited to clerks who understand elections—they include ballot clerks and others with whom the Secretary does not have direct contact. There is a substantial risk of inconsistent application of identity verification procedures, if the injunction is not stayed.

Perhaps more importantly, the Court found that the Secretary's Office had been communicating with the public about the change to student IDs since at least April. ECF No. 63 at 10-11. Among other things, the Secretary's Office published student voting guides, updated polling place posters, updated its website, conducted social media outreach, produced and ran radio ads, and spoke at public events, to explain how identity verification will work in ***both*** the primary and general elections. *Id.* at 11-12. Reversing course between the primary and general elections just one month from the general election, creates an unacceptable risk that the contradiction disincentivizes voting. *See Purcell*, 549 U.S. at 4-5. Moreover, the Court's disagreement with the Secretary's interpretation of state law is nuanced. The public could very easily misunderstand current press reports and the Secretary's restatement of the law's application to allow student IDs—standing alone—to verify identity. That is not New Hampshire law and that is not the Court's ruling here, but there is substantial risk that voters could show up at the polls with only their student IDs in-hand if they misunderstand.

Re-educating local election officials and the public in a short time is practically impossible and risks voter confusion and inconsistent application of law that will likely result in voter disenfranchisement. Defendants are likely to prevail on appeal because the *Purcell* principle's purpose is to avoid such results.

### B. The Doctrine of Laches Forecloses Injunctive Relief this Close to the November Election

The *Purcell* principle governs here, but the doctrine of laches should also foreclose injunctive relief. "[T]he doctrine of laches restricts the assertion of claims or defenses by litigants who have slept upon their rights or prerogatives and, thus, have prejudiced opposing parties by or through their inexcusable delay." *Concord Hosp., Inc. v. N.H. HHS*, 743 F. Supp. 3d 325, 353 (D.N.H. 2024) (quoting *United States v. Letter from Hamilton to De Lafayette (July 21, 1780)*, 15 F.4th 515, 526 (1st Cir. 2021)). Open Democracy cannot reconcile its delay in bringing this lawsuit with its simultaneous demand for preliminary relief.

Laches is "an equitable doctrine which penalizes a litigant for negligent or willful failure to assert [its] rights." *Id.* (quoting *Oriental Fin. Grp., Inc. v. Cooperativa De Ahorro Y Crédito Oriental*, 698 F.3d 9, 20 (1st Cir. 2012)) (alterations in original; quotations and citations omitted). When asserting laches as an equitable defense, a defendant must show: "(1) that the plaintiff's delay in bringing its claim was unreasonable, and (2) that the delay resulted in prejudice to the defendant." *Id.* (citing *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 911 (1st Cir. 1989)).

Open Democracy initiated this lawsuit and sought preliminary relief ***130 days*** after Governor Ayotte signed HB 323 into law (April 3, 2026), and ***70 days*** after HB 323's effective date (June 2, 2026). In the 130 days between enactment and Open Democracy's Motion, the Secretary of State's Office was actively implementing HB 323. Among other things, the

Election Procedure Manual, Department of State's website, social media outreach, radio ads, professionally printed polling place posters, and ballot clerk procedure manuals, have been published and distributed to reflect current New Hampshire election law, including HB 323's changes to identity verification.

While Defendants respectfully disagree with the Court's characterization that they contributed in any way "to the difficulty of this case[,]" the difficulty of a case is not the correct legal standard. Open Democracy has not provided ***any*** justification for its delay in seeking equitable relief. Its emergency motion for preliminary relief forced Defendants to reactively defend without the benefit of a full investigation or developing a complete factual record, to their prejudice. The lack of urgency in filing a lawsuit and subsequent demand to proceed expeditiously on an incomplete record, is typical of the type of unreasonable delay that satisfies the first prong of the laches analysis. *See Concord Hosp., Inc.*, 743 F. Supp. 3d at 353.

Defendants' substantial efforts to educate the public and local election officials and the timing of this lawsuit while administering the September primaries and the November general election, demonstrate why Open Democracy's unjustified delay is substantially prejudicial to Defendants' ability to implement the injunction. This, and the lack of sufficient time to implement all the changes required to comply with the injunction, are the types of prejudice that satisfy the second prong of the laches analysis.

## III. Plaintiff's Unjustified Delay in Filing this Lawsuit Demonstrates that It Will Not Be Harmed by a Stay of the Injunction

Open Democracy cannot be harmed by a stay for the same reason that the doctrine of laches bars the preliminary injunction. *See infra* Sec. II(B). Open Democracy has not offered any justification for waiting 130 days from HB 323's enactment or 70 days after HB 323's effective date to assert its challenge. Where a plaintiff is aware of election law requirements, but

chooses to challenge the law within months of an election, if there is any emergent need for preliminary relief, the "emergency" is one of the plaintiff's own making. *See Respect Me. PAC v. McKee*, 622 F.3d 13, 7-8 (1st Cir. 2010).

Here, Open Democracy chose to wait until the eve of the September primary and November general elections. "Delay or failure to move for a preliminary injunction undermines a showing of irreparable harm at a later juncture." *Tax-Free Fixed Income Fund for P.R. Residents, Inc. v. Ocean Capital LLC*, 137 F.4th 6, 21 (1st Cir. 2025) (citing *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 35 (1st Cir. 2011)). Open Democracy cannot now claim to be harmed by a stay while this appeal is pending.

**IV. The Public Interest Favors a Stay Because Federal Courts Should Not Enjoin Duly Enacted State Election Laws Before Appellate Review, Especially Where an Election Will Be Held in 28 Days**

The public interest favors a stay for same reasons that the *Purcell* principle forecloses the preliminary injunction. *See infra* Sec. II(A). "Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell*, 549 U.S. at 4-5. The public has an interest in clear and consistent rules regarding voter registration and ballot access less than one month before an election. *See Democratic Nat'l Comm.*, 592 U.S. at 1043 (2020) (Kavanaugh, J., concurring) ("When an election is close at hand, the rules of the road should be clear and settled."). Additionally, the public expresses its interests through the laws its representatives enact. *See Atkin v. Kansas*, 191 U.S. 207, 223 (1903). The public interest is not abstract—it is indivisible from the law. *See Virginian Ry. Co. v. Sys. Fed.*, 300 U.S. 515, 552 (1937) ("The fact that Congress has indicated its purpose to make negotiation obligatory is in itself a declaration of public interest and policy which should be persuasive in inducing courts to give relief."). Here, the legislature has chosen the commonsense policy that

only government-issued IDs will be accepted to obtain a ballot. The Secretary issued guidance consistent with the legislature's policy choice. A stay, therefore, is in the public interest.

Additionally, "the public interest favors orderly administration of the election." *Mi Familia Vota v. Hobbs*, 977 F.3d 948, 954 (9th Cir. 2020); *see also Russell v. Lundergan-Grimes*, 769 F.3d 919, 921 (6th Cir. 2014) ("The public has an interest in the orderly administration of elections to ensure that they are fair, and injecting a significant degree of uncertainty about who is permitted to speak where on Election Day does not coincide with that interest."). The First Circuit at least tacitly recognized as much in a recent order. *See N.H. Youth Movement v. Scanlan*, __ F.4th __, 2026 U.S. App. LEXIS 27399, at *5–6 (1st Cir. Sept. 4, 2026). Here, as discussed, the Court's order injects uncertainty and confusion into the electoral process barely a month before the general election. For this additional reason, a stay of that order is in the public interest.

**CONCLUSION**

For the reasons stated above, Defendants respectfully request that the Court stay the injunction until the appellate process has resolved the important questions of law presented here.

Respectfully submitted,

DEFENDANTS DAVID M. SCANLAN, in his official capacity as New Hampshire Secretary of State and JOHN M. FORMELLA, in his official capacity as New Hampshire Attorney General

By their attorney,

JOHN M. FORMELLA
ATTORNEY GENERAL

Date: October 7, 2026

*/s/ Michael P. DeGrandis*
Matthew T. Broadhead, N.H. Bar No. 19808
Associate Attorney General
Michael P. DeGrandis, N.H. Bar No. 277332
Assistant Attorney General

James H. Holl, N.H. Bar No. 279633
Assistant Attorney General
matthew.t.broadhead@doj.nh.gov
michael.p.degrandis@doj.nh.gov
james.h.holl@doj.nh.gov

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all parties of record through the Court's e-filing system.

*/s/ Michael P. DeGrandis*
Michael P. DeGrandis